6 377
94 314

THE CITY OF MILWAUKEE, Plaintiff in Error

*vs.*

STEPHEN B. DAVIS, Defendant in Error.

ERROR TO THE MILWAUKEE CIRCUIT COURT.

When a street, in a plat of or addition to a city, is dedicated by the owner to the public use, and the city, by its authorities, accepts the same and assumes control thereof, the rights of the public therein become fixed.

If the street so dedicated and accepted is passable by nature, or has been rendered so by labor bestowed upon it, the public have the right to use it for such purposes, subject to the rightful power of the city to alter, repair or improve the same.

But it is the duty of the city to see that the work of altering, grading and improving such street be so performed that no person be injured by any negligence, want of care, or omission of duty by any of its agents or operatives in performing the work.

It is the duty of the city, in exercising its power to grade or alter such a street, passable by nature, whereby the passage thereof is rendered dangerous by reason of cuts or embankments, to warn the public by means of lights, fences, guards, tokens or otherwise to prevent loss or damage to any person using ordinary prudence and caution.

Where the city, in grading a public street then in the use and occupation of the public as a highway, leaves the same in a dangerous condition, and without lights, guards or warning to passengers, it is liable for all damages which may accrue to any person from such negligence or omision of duty on the part of the agents or authorities of the city.

*Quaere.* Whether the city is liable for repairs, or damages for want thereof, upon streets that, though dedicated to the public, have never been opened, surveyed and graded by the city?

The declaration of the plaintiff below set forth that Vleit street, in the second ward of the city of Milwaukee, "at the time of the committing of the grievances, &c., therein mentioned, and hitherto had been and still is, a common public street and highway, for all persons to go, return, and pass, and repass, in, by and with horses, coaches, wagons and other carriages, at their free will and pleasure, at, &c. ;" that the

defendant below, well knowing the premises, wrongfully, injuriously, and carelessly, on, &c., graded and cut down a portion of said street, thereby making and producing a steep bank in said street, and then and there wrongfully, &c., kept and continued the same through the night time of the said day, without fixing, or causing to be fixed and placed any light, or signal, or protection at or near such bank or grade to denote and show that said bank was so there, as aforesaid; by means and in consequence of which said negligence and improper conduct of said defendant, ·afterward in the night time of said day, a certain carriage of the plaintiff, of the value of fifteen hundred dollars, and two horses of the plaintiff, of the value of five hundred dollars, were accidentally driven on said bank, whereby said carriage was overturned and broken and greatly injured, and the said horses were greatly bruised, cut and wounded, and rendered of no use and value to the said plaintiff, whereby he claims damage, in the sum of five hundred dollars.

A second count in the declaration contained an additional averment that there was such a bank in said street, and that it was the duty of the defendant to keep a light, signal or protection there in the night time, and that by reason of their neglecting to do so, said accident accrued, as above set forth, &c. The plea was "not guilty."

On the trial of the cause to a jury, the plaintiff introduced as a witness W. H. Garlick, (the driver of the carriage at the time of the accident) who stated that he was coming from the Lisbon Plank Road, and came fifteen or twenty rods down Vleit street, and drove into a hole; the street was dug out on one side, like a cellar, and he drove on the edge, and did not drive quite far enough from it. He supposed this street to be the same as any other street, but it was dug out on the right hand side, and nearly to the centre of the street. It was in the night time, and very dark; could discover nothing only when it lightened. Saw no light, or board to warn him, and the carriage upset, and horses went down, with five passengers besides himself. Carriage was broken; one horse was

badly cut up, the other not so bad; one stood still four or five days, the other fifteen or twenty days.

On cross-examination he said, he was at that time a stranger in that part of the second ward, it rained and hailed very hard, the wind blew, and it thundered; for half an hour he could only see when it lightened. Would not think it safe on such a night to drive in any street where he was not acquainted; intended to return on the street he went out on, but missed the street, lost his way, and got on to Vleit street. "I tipped over from the high bank into the gully." "If I had not started I should not have done so—it was not safe."

*L. Capron,* then in the employ of the plaintiff, went up the next morning after the accident spoken of, to get the carriage; found it in a hole, about half full of water, and the carriage about half under water. The hole, I should think, extended full to the centre of the street, and was made by commencing at the side of the street, and extending to the centre. The road was pretty smooth till I got to this place; beyond this hole west I saw nothing in the street; did not notice any precautions to warn or prevent people from getting into this hole; except where the hole was, the street was the natural surface of the ground.

Plaintiff also proved the amount of his damages sustained by several witnesses.

*Geo. Abert,* called on the part of the city, testified that he lived in the second ward for the last twenty years; Vleit street was a very bad street in a state of nature, and has remained so up to July, 1855, until which time there had been no work done between Ninth and Eleventh, the place where the accident happened; in 1855 the aldermen ordered the grading to be done between Ninth and Eleventh streets; it was possible to go down with carriages before, but it has never been really passable until within a short time past; notice had been given to the owners of lots to do the work, and the owner of the lot in front of which the accident happened, had commenced doing his work from the side of the street next his lot, towards the centre, so as to make a bank six

feet high, and had graded to within four feet of the centre of the street at this place where the accident happened, and at this place there was no track for teams; there was a kind of track for teams within ten or twelve feet of the hole, but it was not used by the public generally, but by people in the vicinity who wanted to get down to the flats; this part of Vleit street had not been graded and opened for public travel at the time of the accident; there was no natural obstacle, or any other kind, to prevent teams from going from the junction to this place—nothing to prevent a carriage coming from the Lisbon Plank Road to the embankment, either of nature or art.

*Herman Haertel*, alderman of the second ward, sworn for defendant: In 1855, the contract was let for grading Vleit street, and the main work was to be done between Ninth and Eleventh streets, where this accident happened. In July, 1855, this grading had not been finished, and I did not at that time consider Vleit street, from Eighth to Eleventh, passable for teams, wagons, and carriages. It was passable, with some risk; they might go through in the day time, but not without danger. It had not been graded and opened for travel. " I consider every street a public street, but mean to say that it was not entirely passable." (It was here admitted that it was a public street, but had not been graded and opened for travel.) For two or three rods from the junction it would look like a public street; there was nothing to warn or prevent any one from going down there in the night.

John McCullough, sworn on the part of the defendant: " I live near where the accident happened. That street was at that time passable; it was habitually traveled with carriages; the track was round one side of the street."

After the evidence had been submitted to the jury, the court, among other things, charged the jury, and defined a public street as any street that had been laid out, set apart and dedicated for the public use, whether the same had been graded and opened for the public use or not; and that the city is responsible to see that all its public streets dedicated to the

Milwaukee vs. Davis.

public use, where the dedication has been accepted by the city, are so worked and so graded, and the duties of its officers so performed, as to occasion no loss, injury or damage to individuals by reason of their negligence, omission of duty, or unskilfulness.

2d. The court further charged the jury, that the city was responsible and liable in damages, to any individual who suffers any special damage, caused by the streets being left in an impassable condition, where, by ordinary prudence and caution he could not foresee and avoid the injury which occasioned the damage.

3d. The court further charged the jury, that where public streets in the city are left in an impassable or dangerous condition to the traveling public, and no means or precautions are taken to warn the public of the danger, or to prevent them from running upon it, unless the person sustaining the injury has notice of the danger, and suffers in consequence of his own negligence, and from the want of ordinary caution and prudence, the city is liable for the damage sustained.

To which instructions the defendant excepted, and his exception was overruled.

4th. The counsel for the defendant then asked the court to instruct the jury, that if the excavation on Vleit street, in which this accident happened, was made by the owner of the lot, under an obligation of law, and was negligently done, the owner of said lot, if any one, would be liable in this action, and not the city.

Also, that if the plaintiff's negligence, or want of ordinary care on his part, or on the part of his driver, by starting to come home in a violent storm, the driver not being acquainted with that part of the city, by which he lost his way, thus led and contributed in any degree to this accident, then the plaintiff could not recover.

Also, that if the streets on the original plat of the city of Milwaukee were not laid out and located by the Common Council of said city, but that if by the city charter the street commissioners of the different wards were authorized to deter-

mine when, and at such times as they deemed it necessary and expedient to improve and grade such streets, that until such streets are graded, improved, or opened for public use, so as to become actual highways, the city is not liable for any injury to persons or property occurring thereon.

To which request the court answered in the negative, and refused to charge the jury as requested. To which refusal the defendant also excepted.

The jury thereupon found for the plaintiff, for whom the court gave final judgment; to reverse which judgment this writ of error is brought.

*E. Foote*, city attorney for plaintiff in error.

1st. The court below erred in refusing to instruct the jury, as requested, in this respect: " that if the excavation on Vliet street, in which this accident happened, was made by the owner of the lot, under an obligation of law, and was negligently done, the owner of said lot, if any one, would be liable in this action, and not the city." Sess. Laws, 1852, 86, 91, 92.

2d. The court instructed the jury, and "defined a public street, as a street that had been laid out, set apart and dedicated for the public use, whether the same had been graded and opened for the public use or not; and that the city is responsible to see that all its public streets dedicated to the public, where the dedication has been accepted by the city, are so worked and so graded, and the duties of its officers so performed, as to occasion no loss, injury or damage to individuals, by reason of their negligence, omission of duty or unskilfulness."

This instruction is erroneous, inasmuch as if the same were correct, then any city would be bound to have every street on its plat, worked, graded, and suitable for public use. *Bowen vs. City of Boston*, 5 Cush., 1; 13 Pick., 102; 21 Id., 44.

3d. The court further charged the jury, that the city was responsible and liable in damages, to any individual who suffers any special damage, caused by the streets being left in an

impassable condition, whereby, by ordinary prudence and caution, he could not foresee and avoid the injury which occasioned the damage.

This instruction was erroneous, in that it did not limit the application to such streets as had been graded, or actually opened for public use.

4th. The counsel for the defendant asked the court to instruct the jury that if the plaintiff's negligence or want of ordinary care on his part, or on the part of his driver, by starting to come home in a violent storm, the driver not being acquainted with that part of the city, by which he lost his way, thus led and contributed in any degree to this accident, then the plaintiff could not recover.

The court erred in refusing to give this instruction. *Raymond vs. The City of Lowell*, 6 Cush., 524; 38 Maine R., 443; 32 Id., 47; 2 Pick., 621.

5th. The court also erred in refusing to instruct the jury, that if the streets on the original plat of the city of Milwaukee, were not laid out and located by the common council of said city, but that if, by the city charter, the street commissioners of the different wards were authorized to determine when, and at such times as they deemed it necessary and expedient to improve and grade such streets, that until such streets are graded, improved or opened for public use, so as to become actual highways, the city is not liable for any injury to persons or property accruing thereon. *Barnes vs. Cole*, 21 Wend., 188; *Ton. R. R. Co., vs. Munger*, 5 Denio, 255; *Gregg vs. Wyman et al.*, Law Rep., Nov., 1851; *Moore & ux. vs. Town of Abbot*, Id., April, 1852.

*Brown and Ogden*, for defendant in error.

I. The first question raised by the case, (and that is the extent to which the definition of a highway, given by the court, is important) is whether the plaintiff had the right to use the street in question, or was a trespasser in passing over it.

When the street is dedicated to the public, and the city accepts the dedication the public acquires the right of way

over the same. R. S. of 1849, 258, § 5; *Kimball vs. City of Kenosha*, 4 Wis., 321; *Commonwealth vs Petersham*, 4 Pick., 119; *Craige vs. Miller et al.* 6 Mass., 7.

The court, therefore, correctly instructed the jury, that where a street is set apart, dedicated and accepted by the city, it is responsible for damage done to individuals, by the negligence, omission of duty or unskilfulness of its officers. *Goodall vs. City of Milwaukee*, 5th Wis. R. 32; *Hobbs vs. Lowell*, 19 Pick. 405; *Jacobs vs. Bangor*, 4 Shep., 187; *Green vs. Danby*, 12 Ver., 338.

II. The second and third exceptions taken by the plaintiff in error, we think, are sufficiently answered by our remarks and authorities on the preceding point. See also *Rockford vs. County Com. of Essex*, 7 Pick., 337; *Commonwealth vs. Boston*, 16 Id., 442; *Thompson vs. Bridgewater*, 7 Id., 188.

III. The city was responsible, although the excavation was made by the owner of the lot by order of the city authorities, and under the obligation of law.

1st. Because it was the duty of the city authorities, when they direct an entire street to be graded, so that it will become impassable to erect some barrier, or give some warning at the entrance of the street, to prevent travelers from passing upon the street.

2d. Because the duty of the city is primarily to the public, and for the purpose of grading, the owner of the lot is, under the charter, but the servant of the city. *Goodall vs. City of Milwaukee, Currier vs. Lowell*, 16 Pick., 170.

IV. We concede that if the negligence of the plaintiff below caused the injury, or materially contributed towards it, then that the city would not be answerable; but the instruction asked for by the defendant below and claimed by him before the jury, involves the idea that no stranger could drive through the streets of our city, and that neither old residents nor strangers could use the streets during a storm, without leaving the city and its servants at full liberty to dig pits and set traps for the unwary. All persons at all times have the right to travel the public streets; and the liability of the city for damage depends upon its having used ordinary and reasonable precau-

Milwaukee vs. Davis.

tion in its grading, &c., to prevent an ordinarily prudent man from suffering injury.

V. The answer to the last exception taken by the plaintiff in error, has been given in the foregoing points and authorities.

We do not maintain that the city is immediately in every case bound to grade a street dedicated to the public use; but we contend that the duties of the city and the necessities of the public go hand in hand together; that all that is required of the city is ordinary skill, caution, and diligence; that if the street is not immediately needed for public use, and its character and position would warn an ordinarily prudent and careful man not to travel over it, then the city is not liable; but if a street is in a dangerous condition, the city should make use of some means of warning to prevent loss and damage to the public.

*By the Court,* SMITH, J.—This was an action brought by the defendant in error against the plaintiff in error, for so carelessly and negligently performing the work of grading Vliet street, as to occasion the injury to the plaintiff below, set forth in his declaration.

The questions presented for our consideration arise out of the instructions given by the court below to the jury.

It appears from the evidence that Vliet street had been laid out, dedicated to and used by the public for some years previous to the occurrence of the accident described in the plaintiff's declaration; had been travelled upon and some parts of it graded, and that teams had been passing and could pass without any difficulty from the place where the accident occurred, west, to the intersection of the street with the Lisbon Plank Road. Some time previous to the accident, Vliet street was ordered, by the proper authorities of the city, to be graded. And at the place of the accident a deep grade had been cut, (about six feet or more), from the margin to the center of the street.

On the 10th day of July, 1855, the plaintiff's servant was driving his carriage, in which were four or five persons, along said street from the west, coming upon the street at its junction with the Lisbon Plank Road, and when arriving at the place in the street where the deep grading had been done, the carriage ran off the embankment, upset, and together with the horses was much broken and injured. It was in the night time, and the night was very dark and stormy. Neither the city authorities or its agents, or contractors, had placed any lights about the embankment or the ditch, or had erected any guard, fence, or any other signal by which persons traveling thereon might be warned of danger or difficulty in passing. These are the prominent facts established by the evidence, though it is not designed to state here the testimony in detail.

After the evidence was closed, the circuit judge proceeded to charge the jury, and among other things, gave the following instructions, to which the defendant below excepted, and here assigned as error, viz:

1. The court below charged the jury, and defined a public street, as any street "that had been laid out, set apart, and "dedicated for the public use, whether the same had been "graded and opened for the public use or not; and that the "city is responsible to see that all its public streets dedicated "to the public, where the dedication has been accepted by the "city, are so worked and so graded, and the duties of its offi- "cers so performed, as to occasion no loss, injury or damage "to individuals, by reason of their negligence, omission of "duty or unskillfulness."

It was contended by the counsel for the plaintiff in error, that this instruction is erroneous, for the reason that if the same were correct, the city would be bound to have every street on its plat worked, graded and suitable for public use.

We do not undertake to say, or even intimate, that under the old system of laying out plats and additions to the city of Milwaukee, the city became bound to construct, and render passable, all the streets so dedicated by the owner of the land to the public use. The city would have assumed no duties,

and be bound by no obligations, merely in consequence of the acts of other persons, however the public rights might have attached thereby. But when the city, by its public authorities accepts the dedication made by the owner, and assumes control of the street on behalf of the public, then its responsibilities attach. After the dedication by the owner, and acceptance by the public authorities, the rights of the public therein become fixed. If the street so dedicated and accepted is passable, the public have the right to use it for all such purposes, subject, it is true, to the rightful power of the city to alter, repair, or improve the same.

The proof in this case establishes the fact that long before the occurrence of the accident complained of, the city had frequently recognized Vleit street as a public street, and had exercised authority and control over it as such. Of this there can be no doubt. At the very time of the accident the street was being graded at the place of the occurrence, under the authority and by the order of the street commissioners of the proper ward of the city. In view of the facts proved in the case, it seems that the fair construction to be put upon this portion of the judge's charge, is that after the city had accepted the dedication of a street, it became its duty to see that the working and grading thereof should be so performed that no person should be injured through the omissions of duty, or want of care in its operatives, in performing the work. We do not understand that the judge intended to charge the jury that it was the duty of the city to proceed immediately to work, grade, and put in passable condition, all streets which might be dedicated. But that in doing the work of grading, &c., it should be done with ordinary skill, and that ordinary care should be observed to prevent accidents. In this case we think he was right. After the dedication and acceptance of a street, all the people have a right to pass and repass over it. If it be in a passable condition in its natural state, the right of the citizen to use it as a street is unquestionable. At the same time the city have by their charter full power to alter the grade, to improve and modify it according to discretion.

But the city authorities, their agents or contractors, have not the right to lay traps or dig pits in the public streets. They are bound, as all other persons are, to use ordinary care and diligence in their operations.

Here was a public street long ago dedicated to, and accepted by the city functionaries. It had been traveled over, it had been ordered graded from time to time in different places, and at this place it had been passable and used as a public street. But the grade had been lowered some six or seven feet by the authority of the city, and the work of grading was going on under the orders of the street commissioners. To accomplish their purpose, a deep cut of about six or seven feet, is made from the margin to a little past the centre of the street, with almost perpendicular sides or banks; and this work is so left without a light, fence, guard, sign or token, to warn or admonish the approaching traveler. That the city had a right to grade the street is undoubted; but it had not the right to absolve its officers and agents from ordinary care and diligence in the performance of the work, nor to escape the consequences of such carelessness on their part.

Such we suppose to be the intent and purport of the first point in the charge excepted to by the plaintiff in error. But even if it would bear a broader construction, we do not see how it could have effected the rights of the plaintiff in error, in view of all the facts in the case. The question was not whether the city was bound to level and grade Vleit street so as to render it passable. The defendant in error was not injured in consequence of any *natural* impedements or inequalities in the street, but his claim for damages is founded upon the alleged fact that the natural surface of the street had been cut down, and a deep excavation made in the line of the street, into which his horses and carriage were plunged in the darkness of the night; there being no light or guard to warn him of a change made in the surface.

The counsel for the plaintiff also alleges for error, the following portion of the charge given by the court below:

"2d. The court further charged the jury, that the city

" was responsible, and liable in damages, to any individual " who suffers any special damage, caused by the streets being " left in an impassable condition, where by the use of ordinary " prudence and caution he could not foresee and avoid the " injury which occasioned the damage."

This instruction was excepted to for the reason that it did not limit the application to such streets as had been graded or actually opened for public use.

The remarks made upon the former instruction will, for the most part, apply equally well to this. Under the proof and circumstances of the case, it would seem that this instruction had reference, not to streets in their natural condition, as they were dedicated, but to those actually in use, and which were " left" in an impassable condition, so that ordinary prudence and caution could not foresee or avoid the danger. The very term, " *left* in an impassable condition," implies that the street had been in a passable condition, but had been rendered impassable by some alteration, and so *left* without due precautions.

We are not advised that it has ever been the practice, or that it is the duty of the city authorities by formal order or publication, to proclaim the streets graded and open for public use. We have been referred to no ordinance, or by-law, or practice, of the kind. On the contrary, it has been the custom, it appears, to use the streets laid out and dedicated, so far as their use was practicable, and we do not understand the court below to have charged the jury, nor for the counsel for the defendant in error to claim here, that the city is necessarily liable for repairs, or damage, for the want thereof upon streets that have never been regularly surveyed and graded. But that when a street has been used, and the city, by its authorities or agents, changes or alters its surface so that it becomes thereby impassable, it is liable for damages unless proper precautionary measures are taken to warn the public of the danger. It was the act of the city that occasions this injury. That act may have been necessary to reduce the surface of the street to a proper grade. But it was the *leaving* of the street in that

impassable condition on the night in question without lights, fence or guard, or other token, "so that ordinary prudence "and caution could not foresee or avoid the injury," that constitutes the gist of the judge's charge, and is in fact the *gravamen* of the complaint. It was not for neglecting to grade and render passable Vleit street; it was not on account of any natural obstruction in the street, that the plaintiff below complained, but it was the act of the city itself in rendering the street impassable which was before passable, and *leaving* it in such condition, without warning, whereby the injury accrued. That the city is liable for such omissions and neglect we have no doubt. While it possesses ample powers over the streets— to lay out, alter, grade. improve, and vacate—it can do none of these things in a wanton manner so as to hazzard the lives and property of the citizens. The city may perhaps order Spring street bridge to be removed; but it must accomplish its work with ordinary care and diligence. It may excavate the streets, but if the excavation is left without proper guards, so that the traveler fall therein, it is liable for the damages incurred. 19 Pick., 405; 4 Shep., 187; 12 Vt. 188; 7 Pick., 337; 6 Id., 444; 7 Id., 188. The city can no more dig pits, or set traps in the street than can a private individual.

The liability thus imposed upon the city is not in any degree a hardship. It does not tend in the slighest degree to impede or retard any improvements which may be deemed advisable. It is an easy matter to erect near such excavations and pitfalls guards and barriers, and place lights when necessary, to protect and warn the traveler. The trouble and expense are trifling, while the objects to be secured—the lives and safety of the citizens—are invaluable. All these improvements may be done with safety to all; but if its agents and employees will conduct its operations in a manner so utterly reckless of human life and property, the city must respond in damages.

Another error assigned by the counsel for the plaintiff in error is the refusal of the circuit judge to give the following instruction as asked: "That if the plaintiff's negligence or "want of ordinary care on his part, or on the part of his dri-

" ver, by starting to come home in a violent storm, the driver " not being acquainted with that part of the city, by which he " lost his way, thus led and contributed in any degree to this " accident, then the plaintiff could not recover."

Most unquestionably if the negligence of the plaintiff's servant contributed to the accident he cannot recover. But this instruction assumes that the driver's starting to come home in a violent storm, he not being acquainted with that part of the city, constituted negligence and want of ordinary care. We cannot so declare, and think the court did right in refusing the instruction as asked. If he had requested the court to instruct the jury that if there was want of ordinary care on the part of the driver of the carriage, or if his negligence contributed to, or occasioned, the injury, the plaintiff could not recover, it would have been error to refuse it. But the court below could not, as a matter of course, charge the jury that the driver's starting to come home in a violent storm, or, that his being a stranger to that part of the city, was want of ordinary care on his part. Besides, it is a matter of fact that the driver, with his carriage, was in the street when it plunged into the ditch. If the excavation had not been there in the street, the injury would not have occurred. And if the night was dark and stormy, so much the more imperative was the duty of the city functionaries to place suitable barriers and signals about the pit-fall which they had dug.

We do not intend to intimate that it is the duty of the city to immediately grade and render passable all the streets and public thoroughfares that may from time to time be dedicated to the public use as such within its limits. The city functionaries have a reasonable discretion in that behalf. But when a street, dedicated and accepted, is passable by nature, or has been rendered so by labor bestowed upon it, and the city functionaries in their discretion set about altering it, they must do their work with due regard to the public safety. They have the control of highways, and have a right to alter and improve them. But the public have also right to be assured that the streets and thoroughfares of the city shall not be excavated,

pit-falls dug therein, and dangerous obstructions interposed without due safeguards being provided against accidents like the one in question.    The public have a right to look to the city authorities for protection in this respect, and if they fail in their duty the city must respond in damages.    This works no harm to any one, but is designed to secure the just rights and protection of all.

We are of the opinion that there was no material error in the ruling of the court below which could in any manner affect the rights of the plaintiff in error, and the judgment of the circuit court must therefore be affirmed with costs.