## HOUFE vs. THE TOWN OF FULTON.

MUNICIPAL CORPORATION: HIGHWAY: ESTOPPEL. (1) *Municipal corporation subject to estoppel.* (2, 3) *When estopped to deny that a road or bridge is a highway.*

DAMAGES. (4) *Question of excessive damages in case of an injury to the person.*

1. It is now well settled that as to matters within the scope of their powers, and the powers of their officers, municipal corporations may be *estopped* under the same circumstances and upon the same principles as natural persons. *Kneeland v. Gilman,* 24 Wis., 39, 42.

2. The establishment and maintenance of public roads and bridges within a town (including the adoption of those already opened or erected) are matters within the scope of the general powers of the town and its officers.

3. While, therefore, it is true as a general proposition, that a town is not liable for injuries caused by the insufficiency of any road or bridge unless the same is a lawful highway, yet, where a road has been opened or a bridge erected by a town or its officers, or where one already created without public authority has been adopted by them, by acts clearly indicating their intention that it shall be regarded as a public highway, the town is *estopped* from denying that it is a *lawful* highway, in an action for injuries caused by its insufficiency or want of repair. So *held* in a case where the town denied its liability for injuries caused by the insufficiency of a bridge (which had been maintained for many years without objection), on the ground that it had been built without the consent of the legislature over a stream which, in contemplation of law, was navigable.

4. The testimony tended to show that plaintiff's hip joint was dislocated, which caused the shortening of his leg about half an inch, and affected its motion; that his spine was injured, and one of the spinal vertebræ fractured; that he suffered much pain for a few weeks, was confined to his bed about a month, and lost six or seven months time; that at the time of the trial he still suffered from rheumatism in his back and shoulders, and that his time was worth from fifty to seventy-five dollars per month. The jury awarded him $2,750 damages. *Held*, that this court will not reverse the judgment on the ground that the damages are excessive.

APPEAL from the Circuit Court for *Rock* County.

Action to recover damages for injuries sustained by respondent by reason of defects in a bridge over Rock River. The decision of this court on a former appeal in the action is reported in 29 Wis., 296–307, where the facts relied on to establish the negligence of the defendant sufficiently appear. On the second trial, considerable evidence was introduced on both sides bearing on the issue of the acceptance by the defendant town of the bridge, the substance of which is stated in the opinion of the court. There was also evidence that boats, rafts, timber and logs had been run down the river; that in one or two instances steamboats had passed up and down the river at the place where the bridge was located; and that Rock River was meandered and returned as navigable by the United States survey of the public land.

The injury to the plaintiff was a dislocation of the hip joint, which caused the shortening of his leg about half an inch, and affected its motion. The evidence also tended to show that his spine was injured, that he suffered much pain for a few weeks, was confined to his bed about a month, and lost six or seven months time; that at the time of the trial he still suffered from rheumatism in his back and shoulders; and that his time was worth from fifty to seventy-five dollars per month.

At the close of the evidence defendant moved for a nonsuit or dismissal of the complaint, on the grounds that it did not appear from the evidence that it was the duty of the town to keep the bridge in repair, and that, it being an unlawful structure, the town had no right to maintain it. This motion being denied, defendant asked the court to give the jury several instructions, the substance of which was: that as the evidence showed that Rock River was navigable, so that no bridge could lawfully be made over it without the permission of the legislature, and as no such permission had been given, the maintenance of the bridge was unlawful, and there was no legal duty resting on the defendant to maintain it, and plaintiff could not recover; and that "a bridge is unlike a common highway," and the statute which provides that roads which shall be used for a certain period of time shall be deemed public highways, does not apply to this bridge. These instructions were refused.

The court charged the jury, in substance, that the fact alone that the stream was meandered and returned as such would not release the town from liability, and that such navigation of the stream as had been shown would not necessarily defeat the action; that ordinarily, in actions of this nature, it is sufficient for the plaintiff to show, in order to establish the legality of the road and to bind the town, actual use of it as a road by the public, for ten years before the accident, without showing any affirmative acts on the part of the town recognizing it as a public highway, except such as the public use implies; but that in this case it was necessary for the plaintiff to show some acts

upon the part of the town adopting or recognizing the bridge as a public highway within the town. The court then reviewed the testimony relative to the acceptance of the bridge by the defendant, and submitted this, with the other questions of fact, to the jury.

Verdict for the plaintiff for $2,750. The defendant moved to set aside the verdict, and for a new trial; and appealed from an order denying the motion.

*I. C. Sloan* and *John Winans*, for appellants:

1. Rock River is navigable, and there was no legislative authority to erect or maintain the bridge in question; hence there was no duty resting on the town to maintain it, and consequently no liability for not keeping it in repair. 2 Coms., 165; *Commonwealth v. Coombs*, 2 Mass., 492; *Anthony v. Inhabitants of Adams*, 1 Met., 284; *Commonwealth v. Charlestown*, 1 Pick., 179; *Inhabitants of Arundel v. McCulloch*, 10 Mass., 70; *Castello v. Landwehr*, 28 Wis., 522. There being a positive injunction in law against the erection and maintenance of the bridge, the town is not estopped from denying that it is a lawful structure. *Cuyler v. Trustees of Rochester*, 12 Wend., 165; 9 Pick., 154; 98 Mass., 219. The copy of the government survey proved that the river is navigable in law. R. S. 1848, ch. 34; R. S. 1858, ch. 41; *Cobb v. Smith*, 16 Wis., 661; 21 id., 636; 6 Am. Law Reg., 24; 1 McLean, 345. The evidence showed that it was navigable in fact. 22 Wis., 572. The bridge is a nuisance. *Barnes v. City of Racine*, 4 Wis., 454. And a town is not bound to maintain and keep in repair a nuisance. 2. The evidence was insufficient to show an acceptance of the bridge by the town. 3. The damages are excessive. *Spicer v. Railway Co.*, 29 Wis., 580; *Potter v. Railway Co.*, 22 id., 615; *Goodno v. Oshkosh*, 28 id., 300.

*John W. Sale*, with *John R. Bennett*, of counsel, for respondent, contended, among other things, that acceptance of a bridge by the public will be presumed, on proof that it has been used by and is useful to the public. Angell on Highways, sec. 164;

*The King v. Inhabitants of Yorkshire,* 2 East, 341; *Rex v. Inhabitants of the West Riding of Yorkshire,* 5 Burr., 2594; *The King v. Inhabitants of Burks,* 12 East, 192; Sherman & Redfield on Negligence, sec. 246, and note. If the authorities of a city or town have treated a place as a public street, they cannot, when sued for an injury, set up want of authority to establish the street. *Bissell v. Mich. S. & N. Ind. R. R. Co.,* 22 N. Y., 258; *Fort Plain Bridge Co. v. Smith,* 30 id., 44; *Mayor v. Sheffield,* 4 Wall., 189; *Leavenworth v. Laing,* 6 Kan., 274; *McDonough v. Virginia City,* 6 Nev., 90; *Codner v. Town of Bradford,* 3 Chand., 291; *Blute v. Scribner,* 23 Wis., 357. The maxim "No man shall take advantage of his own wrong," applies to towns as well as individuals. Broom's Leg. Max., 212. If the bridge was in an unsafe condition, the town was bound to put up suitable guards as protection for the public. *Seward v. Town of Milford,* 21 Wis., 485. 2. Meandering and returning a stream as navigable, by U. S. surveyors, is not conclusive proof of navigability. 2 Wis., 308. 3. The damages are not excessive. *Potter v. Railway Co.,* 22 Wis., 615; *Schmidt v. Railway Co.,* 23 id., 186; *Goodno v. Oshkosh,* 28 id., 300.

DIXON, C. J. Suppose an injury to happen from a defect in a way formally laid out and opened by the supervisors of the town, and which has been worked and prepared for travel, and annually repaired under their authority and directions, and used by the traveling public for a number of years. And suppose, furthermore, that the proceedings to lay out and open were formal only, that is, legal and valid only in appearance or as shown on their face, but illegal and void in substance, so that no highway existed by the act of laying out and opening where the supervisors and community in general believed it was; and suppose, also, that the land owner had done nothing to waive or relinquish his rights, and the public had acquired none by lapse of time or adverse user or otherwise: could the the town, when sued for the damage resulting from such injury,

successfully defend the action on the ground of some hitherto unobserved defect or irregularity in the proceedings to lay out and open, and because the way was not in strict law a public highway, in every particular valid and legal, although the proper officers of the town had taken actual and notorious possession of it as such, and opened and worked it, and invited and encouraged the traveling public to pass over and use it, and it had been so passed over and used for several years? Or suppose that, without any steps being taken to lay out and open or otherwise to acquire the immediate legal right, the authorities of the town enter into and maintain the peaceable and undisturbed possession of land as a highway, occupying and controlling and putting it in order and making repairs upon it as such, and it is so used by the public for a series of years, and that afterwards, and whilst the way is so in the possession and use of the public and under the control of the town authorities, an injury is sustained by reason of some insufficiency in it: can the town reply that such possession and control were without right and unlawful, and that the place was not what the supervisors assumed and held it out to be, namely, a highway, but was private property, and that hence there is no responsibility on the part of the town for the injury? Or suppose the town or its officers relied, or were about to rely, on an adverse user of ten years to acquire the public the right, and that damage should be caused by an insufficiency on the last day before the expiration of the ten years: could the town plead that it was not a legal highway at the date of the injury, and so claim immunity from the consequences of its own neglect?

The foregoing suppositions have been indulged and inquiries suggested, because they are believed to involve a very similar, if not the identical, principle upon which the town seeks to shun responsibility for the injury sustained in consequence of the insufficiency of the bridge in the case at bar. The bridge in question, or one at the same place which was afterwards

carried away by high water, was erected in the year 1846. That bridge stood until 1854 or 1855, when it was destroyed, and another bridge, the present one, was built in 1857. Both bridges were built and maintained by private subscription and at private expense, until this accident happened, in December, 1868. But in April, 1848, the electors of the town in annual town meeting voted that the bridge then standing "be accepted by the town, and considered town property." At the same time the electors voted "that the sum of one hundred dollars be appropriated and applied to the bridge for the purpose of paying up arrearages and completing the same;" but the sum so appropriated was never applied to that purpose. In October, 1848, a highway was laid out and opened by order of the commissioners of the town, beginning at the centre of the southeast end of the bridge, and running southeasterly to its intersection with another highway. In March, 1850, another road was laid out and opened by the supervisors, connecting with the westerly end of the bridge, or with a road running to the bridge at that end. Again, in 1853 the supervisors laid out and opened another road, "beginning on the east end of the bridge." At the annual town meeting held in April, 1856, which was before the present bridge was erected, the electors voted to raise five hundred dollars to apply on the bridge, "with the understanding that Daniel and Robert Stone obligate themselves to keep said bridge in good repair for the term of ten years, and defend the town from all damages by said bridge during the term of years mentioned above." The Stones refused to accept the money on the terms stated in the resolution, but rebuilt the bridge with their own means, and what they could obtain by subscription from others. At the annual town meeting in April, 1868, the electors of the town resolved to raise the sum of $400 for the support of the bridge in question ; but that sum was not in fact so applied until after this accident happened in the following December, when the officers of the town proceeded to repair and put the bridge in proper condi-

tion with the funds so appropriated.   Such is a brief history of the transactions of the town and its officers in connection with the bridge.   It does not appear that the acts of the officers in laying out and opening the roads running to and from the bridge were in all respects legal and proper; nor is it material to our present purposes that they should have been.   It is enough that the officers assumed to take charge of and to control the lands on either side of the stream and immediately connecting with the bridge, as public highways.

Another fact which should be stated is, that both the old bridge and the new were constantly used by the traveling public as a bridge belonging to the town, and connected with and constituting a part of its public highways.   This use was with the knowledge and assent of the officers of the town, or at least without any dissent on their part, or notice or warning from them to travelers or any one else, that the bridge was not of the character and kind which its situation and appearance, and the use to which it was applied, indicated, and was not the property of the town.        °

The facts shown are quite sufficient to charge the town with responsibility for the insufficiency of the bridge, provided only that it was a lawful structure, or one which the supervisors had authority of law to erect across Rock River at that place.   Rock River is a navigable stream, so claimed and so conceded, which no person or corporation has the right to obstruct, so as materially to interfere with, disturb or diminish its capacity and usefulness for the purposes of navigation, without the consent of the legislature.   The legislature never granted permission to build this bridge, and the answer of the town now is, that it was and is an unlawful structure, a public nuisance in fact, erected and maintained in defiance of law ; and that since such is its character, no matter how the town or its officers may have conducted so as to draw the unwary traveler into mischief, still the town is not liable for any damage or injury which may have befallen him.   Such an answer, whatever may be its legal tone

or effect, in point of morals certainly sounds very badly. It always sounds badly when a party seeks to excuse or justify one wrong by saying that he perpetrated still another, which was the cause of that complained of. This is bad morals, whether it be bad law or not. But we think it is bad law, in a case like this.

The facts are, that the town has always been permitted to maintain the bridge, the same as though original authority had been obtained from the legislature for building it. No indictment has ever been found, or information filed, or prosecution instituted against the town for erecting or maintaining it; and no complaint has ever been made of any obstruction to the navigation of the river, or that any inconvenience or detriment has been suffered by the public from that source. The facts appearing on the trial were, that for many years past little or no use has been made of the stream for the purposes of navigation or the transportation of logs, lumber or any of the products of the country. It has become, at and above the place of bridging and far below it, a stream of no significance whatever as navigable waters — navigable in name only, but practically useless and unimportant. If it were a question of expediency, to be determined by the courts, whether such a stream ought or ought not to be bridged, there would be little difficulty in holding that the bridge was a lawful structure. Certainly the public inconvenience for want of a bridge many times exceeds that arising from its presence. And there are authorities which seem to sanction the rule that erections of the kind over streams of this nature are not unlawful, provided a convenient and suitable passage way up and down them be left for the public, and the navigation be not materially impeded or endangered. *Williams v. Beardsley*, 2 Carter (Ind.), 591; *Lancey v. Clifford*, 54 Maine, 487; *Munson v. Hungerford*, 6 Barb., 265; *Moore v. Sanborne*, 2 Mich., 519. But without going this length, but keeping within the rule established by the Massachusetts decisions cited by counsel for the town. that

legislative assent is in all cases necessary to make the structure lawful, we are still of opinion that the town was properly held liable in damages for the injury sustained by the plaintiff in consequence of the unsuitable and unsafe condition of the bridge in this case.

It is of course a proposition generally correct, that the town is not liable for damages caused by an insufficiency, unless the place where the injury was received and the insufficiency existed, was a lawful public highway, which it was the duty of the town to keep in a state of reasonable safety and repair. The liability of the town under the statute results from its omission to perform this duty; and if there be no highway at the place of injury, there can be no obligation to maintain or keep it in repair as such, and consequently no liability for insufficiency. It may be true, therefore, we say, as a general poposition, that the liability of the town depends upon the legality as well as the insufficiency of the way. We find many cases in which legality, or the existence of the way *de jure*, has been the turning point or test of such liability. But such is not, in our judgment, the test in all cases. There may be cases where the *de facto* existence of the highway, one maintained by the town or its officers without lawful right, suffices to charge the town with liability. We are of opinion that this is such a case.

The early decisions in Massachusetts and Maine held that there would be no recovery against the town unless the way was lawful, and one which the town had the right and was under strict obligation of law to repair. This was held notwithstanding the town had taken possession of the way, and opened and improved it as one of the public roads belonging to it. *Todd v. Rowe*, 2 Greenl., 55, and *Estes v. Troy*, 5 id., 368, are strong cases of this description, and others doubtless may be found.

But the legislatures of those states, to obviate the injustice and to protect the traveler in such case, enacted that the re-

pairing of a way by the proper officers of the town within six years before the time of an accident from a defect therein, should be competent and sufficient evidence to establish the liability of the town for the damages resulting from the accident. *Hayden v. Attleborough,* 7 Gray, 338; *McCann v. Bangor,* 58 Maine, 348. The statute of Maine declares that the town shall be estopped to deny the location of the way or bridge on which the injury occurred.

But of late years, much more than formerly, the doctrine of estoppel, most wholesome and just in its operation when properly applied, has been extended to these municipal corporations, so as to bind and conclude them by their own acts and acquiescence and the acts and acquiescence of their officers, wherever an estoppel would exist in the case of natural persons. It is now well settled, that as to matters within the scope of their powers and the powers of their officers, such corporations may be estopped upon the same principles and under the same circumstances as natural persons. *Kneeland v. Gilman,* 24 Wis., 39, 42. The laying out, opening and improvement of roads, and the erection of bridges, also the expending of work and labor upon them, as well as the raising and appropriation of money for those purposes, are all matters within the scope of the general powers of the town and its officers. The same is true also of the adoption or ratification of roads already laid out and opened, and of bridges already erected and in use. When, therefore, a town or its officers ratify and adopt a bridge already built without its authority, or take possession of it as one of the public bridges of the town and a part of its highways, or by other acts clearly indicate such intent, and that it is to be so regarded by the public, the town may be estopped from denying that such is its true character, or from affirming that it had no lawful right to adopt or maintain it. And the same estoppel may arise where the town or its officers take unlawful possession of land as a highway, and expend labor upon and improve and hold it out to the

world as such.   The estoppel in such cases arises from the acts of the town and its officers, performed within their apparent authority ; and if they, who ought to know, were deceived and mistaken, it would be most inequitable and wrong to visit the consequences upon innocent third persons, who relied upon and were justified in confiding in their action.

This principle is sustained by many modern decisions, and by none more clearly and emphatically than by the early decision of this court in *Codner v. Bradford*, 3 Chand., 291, where the court say :   " If the labor and taxes were expended upon a road not established in accordance with the law, it is the fault of the town, and it cannot be permitted to take advantage of its own wrong.   It would be a harsh rule to require a person to search the records, and survey the traveled roads, to ascertain if all the minutiæ of law had been complied with, and the public money and labor had been expended upon the exact route laid out and surveyed, though he may have paid taxes and worked for that very security that the law declares he shall have while traveling upon the public highways.   In an action like the one under consideration, it is only requisite to prove that the road was one in fact, and so recognized by the town through its legally constituted agents, in order to make it liable in damages."

Very similar was the case of *Williams v. Cummington*, 18 Pick., 312, in which the following observations occur in the opinion :   "It may well be doubted whether a town which, in making and repairing a highway, has by accident or design deviated from the true location, should be allowed to deny their liability to maintain it as they have made it.   *It would be a dangerous imposition upon the public, and their conduct should be deemed an estoppel in pais.*   Long occupation and enjoyment, unexplained, will raise a presumption of a grant, not only of an easement, but of the land itself ; and not only of a grant, but of acts of legislation and matters of record."

And in *Mayor v. Sheffield*, 4 Wallace, 189, the rule is broadly

affirmed as follows: "If the authorities of a city or town have treated a place as a public street, taking charge of it and regulating it as they do other streets, and an individual is injured in consequence of the negligent and careless manner in which this is done, the corporation cannot, when it is sued for such injury, throw the party upon an inquiry into the regularity of the proceedings by which the land became a street, or into the authority by which the street was originally established." To the same effect are the cases of *Leavenworth v. Laing*, 6 Kansas, 274, and *McDonough v. Virginia City*, 6 Nev., 90.

And the cases of *Bissell v. Railroad Co.*, 22 N. Y., 258, and *Fort Plain Bridge Co. v. Smith*, 30 id., 44, also bear upon and illustrate the same principle.

And there is authority for saying that mere acquiescence on the part of the town or its officers in the use of the bridge by the traveling public would estop the town, and make it responsible for the safety and sufficiency of the bridge. It is provided by statute in some states, that the town may post. notices, or otherwise give public information, that a bridge or way is not recognized by, and does not belong to the town, where such is the fact, and thus prevent liability for injuries happening from insufficiencies. It is not perceived why the same thing might not be done, in proper cases, without the aid of a statute.

Upon the point that the damages are excessive, we make no comment, only to say that, considering the nature and extent of the injury, we cannot so pronounce them, or disturb the verdict on that ground.

On the whole case, we think the verdict and judgment were right, and that there was no error of which the defendant can complain.

*By the Court.*— The judgment is affirmed.

LYON, J., took no part in the above decision, the case having once been tried before him at the circuit.