GREEN VS. THE TOWN OF BRIDGE CREEK.

TOWNS: HIGHWAYS: BRIDGES.   (1) *General rule as to liability of towns for injuries from defective roads and bridges.   (2, 3) Case stated.   (4, 5) Town not bound to warn travelers against places of danger not on or contiguous to highway.*

1. The statute which provides that if any damage shall happen to any person or his property by reason of the insufficiency or want of repairs of any bridge or road in any town of this state, the town shall be liable therefor (R. S., ch. 19, sec. 120), refers to roads and bridges which are public highways of the town, and which it is bound to repair.

2. A bridge was built by volunteers, for their own accommodation, without any authority from the defendant town, at least ten rods distant from the nearest public highway, and forty rods from the place where such highway crossed the same stream by a ford.   The latter crossing was difficult, and in high water even dangerous; the route by the bridge was shorter; and the major part of the travel passed that way during the time (less than three years) that the bridge existed; but the bridge and the tracks connecting it with the highway were never recognized in any manner as belonging to the town; more or less travel continued to cross the ford while the bridge existed; and both before and after that period it was the usual crossing on that road; there was another highway running in the same general direction,

provided with a bridge, about a mile further up the creek, and leading to plaintiff's place of residence; and the intervening country was sparsely settled. When the accident to plaintiff happened, the water was high, but the ford was passable. No means had been taken to warn travelers against crossing the bridge. *Held*, that defendant was not liable for damages caused by the defective condition of the bridge. *Houfe v. Town of Fulton*, 34 Wis., 608, distinguished.

[3. Had the bridge been erected within the limits of the highway (though by private individuals), there would have been much reason for holding that the town was bound to adopt it as a part of the highway, and keep it in repair, or remove it from the highway altogether.]

4. It is not the duty of a town to provide barriers or post notices to prevent travelers from driving off the public highway to places of danger not contiguous to the highway, but distant from it.

5. The plaintiff in this case was well acquainted with the bridge and its condition, having crossed it only three days before the accident; and the place where the track to the bridge diverged from the highway, was not in the defendant town. *Held*, that for these reasons, also, the town is not liable in this action, for negligence in failing to warn travelers from such track.

APPEAL from the Circuit Court for *Eau Claire* County.

Bridge creek flows through the territory of the defendant town in a general northwestern direction, and crosses the western boundary of said town into the adjoining town of Lincoln, some thirty or forty rods above the point where it empties into the Eau Claire river. Over this creek, at a point in the defendant town about five rods east of the line between it and the town of Lincoln, was built, in December, 1869, by private persons residing in the latter town, a bridge known as "Murphy's bridge." A road runs in a general easterly direction, from the city of Eau Claire to the pineries situated higher up the Eau Claire river. At a certain point in the town of Lincoln, apparently about forty rods west of the line between that and the defendant town, where this road has a southeastern bearing, it divides into three tracks (as represented on the map printed herewith, copied from those put in evidence at the trial). One of these tracks continues to the southeast, and is apparently the road mentioned in the opinion, which crosses Bridge creek

Green vs. The Town of Bridge Creek.

by a bridge at a place called the "dalles," about a mile above the spot where Murphy's bridge was. Another track descends in an easterly direction along a ravine, while the third track, called by the witnesses the "road around the crown of the hill," bears towards the northeast to a point in the town of Lincoln about five rods west of the boundary line between it and the defendant town, then turns to the southeast, crosses the dividing line between the towns, and unites with the road down the ravine, at a point distant seventeen rods from the Murphy bridge, a little east of south therefrom. From this point the old pinery road extends in a general easterly direction, crossing Bridge creek within the defendant town, by a ford known as the "old ford," at a distance, by air line, of over forty-one rods southeast from the Murphy bridge. At the point where the road around the crown of the hill turns from a northeasterly to a southeasterly direction to unite with the road down the ravine, a track diverging from it ran a distance of ten rods to the Murphy bridge, and from the eastern end of this bridge continued eastward until it united with the road which crosses at the "old ford."

In May, 1872, the plaintiff was driving from the city of Eau Claire to his home near Sugartown, in the pineries on the upper Eau Claire river. When he approached the division line between the towns of Lincoln and *Bridge Creek*, he took the "road around the crown of the hill," above described, followed the track leading to Murphy's bridge, and attempted to drive across that bridge; but the stringers gave way, and the team and wagon, with the plaintiff, his family and his goods, were precipitated into the creek. For the injuries thus suffered by him in person and property, he brought this action, in December, 1873, claiming that the "old pinery road" was a public highway; that the bridge was a part of said highway; and that it was out of repair, etc. The defendant town denied that the old pinery road was a public highway; denied that the bridge in question was a part of that road, or of any pub

lic highway; and alleged that plaintiff was guilty of negligence in driving his team upon said bridge, knowing the same to be in an unsafe condition.

The evidence at the trial was voluminous; but the material facts which this court regards as established by it (in addition to those already stated) are set forth in the opinion.

At defendant's request the court instructed the jury, 1. That if plaintiff, at the time of the accident, knew the unsafe condition of the bridge, he could not recover in this action. 2. That if there was a public highway across Bridge creek at the "old ford," at the time the Murphy bridge was erected, then the public road over the ford was not done away with by building a bridge across said creek which afforded the public a more acceptable transit, provided the ford was used when the bridge was out of repair.

The following instructions, asked by the defendant, were refused: 1. That if the old pinery road, where it crossed Bridge creek at the ford, was a public highway in December, 1869, and if private individuals erected a bridge across said creek some forty rods below said road, which bridge, while it remained in repair, might offer the public a more acceptable transit across said creek, and if said ford was used when the bridge was out of repair, then the using of said bridge from December, 1869, to May, 1872, by the public, would not be sufficient of itself to make said bridge, and the road leading from said old pinery road to it, a public highway, or to make defendant liable in this action. 2. That if the bridge was not on the track of a highway legally laid out, or traveled twenty years, or within four rods of said highway, plaintiff could not recover in this action. 3. That if the bridge was not on the track of a highway legally laid out or traveled ten years, nor within four rods of such highway, plaintiff could not recover.

Of the instructions given by the court in its general charge, bearing upon the questions here considered, the only one to which exception seems to have been taken was substantially as

follows : That if, prior to the building of the Murphy bridge, the old pinery road had become a public highway by user, and if, prior to the same time, the track around the crown of the hill which rejoined the old track before it reached the "old ford," had been used by the public for travel for ten years, and if from the time of the building of said bridge the traveling public abandoned the track to the old ford, because said track, or the ford itself, was in an unsafe condition, and if the track over the bridge was open and adjoining the old track, and the bridge was built as near the old ford as a suitable place for a bridge could be found, and if this road over said bridge was in continual and common use from the time when it was built to the time of this accident, then the jury would be justified in finding that said bridge formed a part of the highway known as the old pinery road. .

The jury found for the plaintiff; and, a new trial having been denied, defendant appealed from a judgment on the verdict.

*W. P. Bartlett* and *Henry H. Hayden*, for the appellant, argued the following, among other points : 1. The liability to maintain a highway by user cannot be imposed on a town without its consent, if such town has provided other and lawful highways, leading to and from the same points, though more circuitous. The defendant town discharged its duty by providing the highway leading from Eau Claire to the pineries, and crossing Bridge Creek at the dalles, though that road was from one to three miles longer. That duty being discharged, the obligation to maintain this old pinery track could not be imposed on the town without its consent. *State v. Joyce*, 19 Wis., 90 ; *Blute v. Scribner*, 23 id., 357. · In *Hanson v. Taylor*, 23 Wis., 547, this court held that an uninterrupted user for ten or twenty years was such conclusive evidence, in favor of the public, of a dedication or acquiescence, as to bar the landowner ; but it did not hold that such dedication by the owner, or user by the public, was an acceptance by the town, binding

it to maintain the.road. The prescriptive or·customary right of travel may exist in favor of the public, against the land owner, without an obligation on the part of the town to maintain the way. *Oswego v. Oswego Canal Co.*, 6 N. Y., 263; *Folsom v. Underhill*, 36 Vt., 580. 2: The accident↓ to plaintiff did not happen upon the old pinery road, but upon a road which had been used less than two and a half years. While traveling this new track, instead of the highway, plaintiff waived any claim he might have against the town for insufficiency of the old road. He was not then a traveler on the highway. *Hawes v. Fox Lake*, 33 Wis., 442–3; 14 Am. R., 686; 10 R. I., 304. The usual crossing of the creek on the old pinery road was at the ford; and if an accident had happened there, from the insufficiency of the road at that place, the town would undoubtedly have been liable. Could it be liable for another accident, happening at the same time, at a bridge seventeen rods distant, neither built nor accepted by the town, and situated upon a new track, starting in the adjoining town, and never adopted or recognized by the defendant as a highway? By maintaining the road by the ford as well as the bridge at the dalles, the town negatived the idea that the Murphy track and bridge were a highway. *Houfe v. Town of Fulton*, 34 Wis., 617, 618. Moreover the town had no authority to go upon the land at that place to repair the track or bridge, and therefore could not be responsible for their condition. 3. The bridge not being near to or connected with any highway in the defendant town, that town was not bound to erect any barrier to prevent travelers from going to and across the bridge. *Chapman v. Cook*, 14 Am. R., 686; *Sparhawk v. Salem*, 1 Allen, 30; *Wheeler v. Westport*, 30 Wis., 405. In fact the defendant had no *right* to place a barrier at the point where this Murphy track diverged from the old road, that point being in another town; neither had it any authority to place a barrier outside of the limits of the highway, where the Murphy road entered the town of *Bridge Creek;* and certainly it

could not destroy or obstruct the bridge, which was private property. If this bridge had been built within the limits of the highway, it might be held that it was thereby dedicated to the public, and the town, having acquiesced in its construction as a part of the highway, might be bound to maintain it (*Requa v. Rochester*, 45 N. Y., 134); but that doctrine does not apply here. 4. Counsel also contended that a new trial should have been granted, because the evidence showed clearly that plaintiff was guilty of contributory negligence.

*A. Meggett*, for respondent, argued the following points, with others: 1. The evidence showed that the bridge was placed as near to the old pinery road (or that branch of it mainly traveled for ten years over the brow of the hill), as the nature of the ground would permit, and, the main travel having passed over it as a part of this highway from its erection to the time of the accident, with the defendant's consent, shown by its acquiescence and its failure to provide any other suitable crossing over the creek, this bridge became a part of the highway, even though placed there by volunteers, and though the user was for less than twenty years. *Savage v. Bangor*, 40 Me., 178; *Requa v. City of Rochester*, 45 N. Y., 129; *State v. Campton*, 2 N. H., 513; *Wilson v. Jefferson*, 13 Iowa, 181; *Ward v. Jefferson*, 24 Wis., 345–6. 2. The evidence shows that the old ford, at the time of the accident, was impassable from high water and other causes; the plaintiff, following the main traveled track, crossed this bridge from necessity, at the only point at which he could cross on that road; and the defendant, not having provided any other crossing there, nor put up barriers to warn travelers off this road, was liable for the defect therein. *Cobb v. Standish*, 14 Me., 198; *Burnham v. Boston*, 10 Allen, 290; *Cassedy v. Stockbridge*, 21 Vt., 391; *Ireland v. O. H. & S. Plankroad Co.*, 13 N. Y., 534; *Milwaukee v. Davis*, 6 Wis., 383–5; *Kelley v. Fond du Lac*, 31 id., 186; *Wheeler v. Westport*, 30 id., 403–5; *Hawes v. Fox Lake*, 33 id., 441. 3. The question whether the bridge became a part of the highway was

one for the jury. *Lawrence v. Mt. Vernon*, 35 Me., 100; *Blute v. Scribner*, 23 Wis., 359; *Kelley v. Fond du Lac*, 31 id., 187; *Barstow v. Berlin*, 34 id., 361; *McCabe v. Town of Hammond*, id., 593; *Butler v. Railway Co.*, 28 id., 501.

COLE, J. For the purposes of this case it may be assumed that the road known as the old pinery road, down the ravine and across Bridge Creek at the ford, had become a public highway by user or prescription. It may also be conceded that the road across the crown of the hill, which turned back into the main track, and which the evidence showed had been traveled over for more than ten years, was likewise a highway by user. But still the town rests its defense upon the ground that the bridge where the accident occurred was no part of either of these highways, and that it was under no obligation to keep it in suitable repair. Whether, under the circumstances, it was the duty of the town to keep the bridge in sufficient repair, or, if not, whether it should have employed some means to warn persons of its dangerous condition, are questions presented on the record and ably discussed on the argument.

The bridge in question was built in December, 1869, by persons living in the adjoining town of Lincoln, as it appears, for their own accommodation in crossing the creek at that point. There is no evidence that the authorities of the defendant town have ever adopted the bridge as belonging to the town, nor have they exercised any control over it, or treated it as constituting a part of any highway of the town. The bridge is ten rods distant from the nearest point in the highway leading over the crown of the hill, and seventeen rods distant from the nearest approach of the old pinery road. The ford which was and is the usual crossing of the old pinery road, is up the creek from the bridge over forty rods by a direct line. No travel ever crossed the creek where this bridge, called the Murphy bridge, was erected, except for less than two and one-half years while it existed; and after its destruction the travel all re-

turned to the old ford. The evidence shows that the road by the old ford continued open while the Murphy bridge existed, and more or less travel continued to cross there, though the crossing was difficult and at times of high water even dangerous. But there was another highway leading from Eau Claire to the pineries in the same general direction as the old pinery road, and provided with a bridge across the creek at the dalles, about a mile above the Murphy bridge; and this road led to Sugartown, where the plaintiff resided. The old pinery road generally passed through a sandy, unimproved country; and in places the travel diverged from, and again returned to, the old track. The plaintiff was familiar with the country, and was acquainted with the different roads and crossings. The water was high in the creek when the accident happened, though the road by the old ford was passable, the ford being actually crossed the next day by George S. Hyde, one of the plaintiff's witnesses, with his wagon and team. After the Murphy bridge was built, the main travel crossed it, and it shortened the distance to go that way rather than by the old ford. The bridge was only five rods east of the line between the towns of Lincoln and Bridge Creek, and the authorities of neither town had taken any means to prevent or warn travelers against crossing it. These are the leading facts upon which the liability of the defendant is to be determined.

The first question to be considered is, Was it the duty of the defendant to keep the Murphy bridge, built in the manner indicated, in a safe condition for the passage of the public travel over it, and is it liable for an injury which occurred in consequence of its being out of repair? The statute imposes upon a town the duty of keeping all public highways and bridges within its limits in proper repair, and makes it liable for any damages which shall happen to any person, or to his property, by reason of their insufficiency. Sec. 120, ch. 19, R. S. This statute obviously refers to the public highways of the town in fact, or highways which have become such in some

way known to the law, and which the town is bound to repair, and the bridges situated on such highways constituting a part thereof. The liability of the town does not always depend upon the existence of a bridge or highway *de jure*, as was decided in *Houfe v. The Town of Fulton*, 34 Wis., 608. In that case the chief justice remarks that the *de facto* existence of a highway or bridge, as where a town has maintained or recognized a bridge or highway as belonging to it and under its control, will suffice to charge the town with the duty of keeping it in a suitable and safe condition. In the *Houfe* case, the bridge was built across Rock river, a navigable stream, without the permission of the legislature, and the town sought to avoid its liability to keep it in proper repair, on the ground that the structure was an unlawful one. But it appearing that the bridge, though originally built by private subscriptions, was upon a highway, and had been used by the public at all times to pass over the river, and had also been accepted by the town and treated as town property, the town was held liable for an injury happening by reason of its insufficiency, though the bridge might have been maintained without lawful right. But the bridge in question does not come within the application of any such principle or rule of law. This bridge was built by volunteers, without any authority from the defendant, and at least ten rods distant from any public highway. It was erected for the accommodation of the persons who built it, though the public have likewise used it. But it is beyond the limits of any highway which the town is bound to repair, and it does not, like that in the *Houfe* case, connect portions of road on each side of the creek, which were highways of the town. The town has not adopted it, nor recognized it in any manner as a bridge belonging to the town. Were the bridge erected within the limits of the highway by private individuals, there would be much reason for holding that the town was bound to adopt it as a part of the highway, and keep it in repair, or remove it from the highway altogether. (See *The King v. The Inhab-*

*itants of West Riding of Yorkshire*, 2 East, 341.)    But such is not the case.    The bridge is not a public bridge, nor is the way from the bottom of the hill across the creek at that point a highway by user.    We have not been referred to any case which would be an authority for holding the town liable for the repair of a bridge built by individuals, as this was, distant from any public highway, which the town has never recognized as a bridge belonging to it or under its control.

The case of *Requa v. City of Rochester*, 45 N. Y., 130, is no authority for holding the town bound to repair this bridge upon the facts disclosed in the evidence.    In that case an excavation was made in a street by the authorities of the city, so as to cause an abrupt descent from a public alley to the street, and rendered egress from the alley inconvenient and dangerous. This excavation had been bridged by a volunteer, and the city had allowed the bridge to remain there for years.    The court held, upon the facts of the case, that this bridge became the property of the city, and, as it was the duty of the city to keep its streets and public alleys in a condition for safe passage over them, it was bound to keep this bridge in suitable repair.

The cases of *Cobb v. Inhabitants of Standish*, 14 Me., 198, and *Savage v. Bangor*, 40 id., 176, are not at all analogous to the one before us.    In those cases the defects were within the limits of the highways.

The fact that the main travel passed over the bridge after its erection, without objection from the authorities of the town, cannot render the town responsible for the repair of the bridge, unless the structure was situated on and constituted a part of a public highway.    The injury was occasioned by defects in a private bridge, and not by defects in a public bridge.    For the bridge was so far distant from any public highway, that in no sense did it constitute any portion or part of a highway of the town.    Nor do we well see what right the authorities of the town had to object to persons crossing this bridge who might be willing to take the risk of doing so.

It is said by plaintiff's counsel, that the condition of the old ford was such that the plaintiff was compelled to cross the bridge in order to pursue his journey home to Sugartown, and that the town is responsible for imposing upon him this risk. The crossing by the old ford in times of high water was confessedly difficult, but, as before remarked, was not impracticable at this time. But the highway across the creek at the dalles was provided with a safe bridge, which the plaintiff might have taken and avoided all danger. It must be borne in mind that the old pinery road led through a barren and uncultivated country, where population was sparse. And it would be onerous to require towns in such districts to build and maintain as many bridges as in more wealthy and populous communities. We do not, however, intend to relieve towns from the duty the statute imposes to keep the highways and bridges within their limits in a suitable condition for public travel. Had the bridge where the injury was received been upon a public highway which the town was bound to keep in a safe and proper condition, the liability would be enforced.

But again it is said the town was negligent in not using some means to warn travelers off the way on which the bridge was situated, and to prevent them from incurring danger in crossing it. The evidence shows very clearly that the plaintiff was well acquainted with this bridge, having crossed it but three days before the accident, while going to Eau Claire. A notice to him of its obvious defects and insufficiency would afford no information which he did not already possess. He was perfectly familiar with the bridge, and doubtless had as much knowledge of its condition as any one. But, under the circumstances of the case, we cannot assent to the proposition that it was the duty of the defendant town to place barriers across the way leading from the highway over the hill to this bridge; or to post notices informing the public that the bridge did not belong to the town, or that it was out of repair. It is apparent that if barriers were placed or notices posted any-

where, in order to be effectual for warning, they should have been placed or posted at or near the point where the track diverged from the highway, which would be in the town of Lincoln. But we do not understand it to be the duty of a town to provide barriers or post notices to prevent travelers from driving off the public highway to places of danger not contiguous to the highway but distant from it. In *Chapman v. Cook,* 10 R. I., 304, the court say that no such obligation rests upon the town, and the doctrine seems reasonable and just. In that case an accident happened to one who drove off by mistake from the public highway upon a private way connected therewith, and was injured by a defect in the private way some fifty to one hundred feet from the junction of the two ways. And it was claimed that it was the duty of the town, knowing the private way to be dangerous, to place a fence at the deviation so as to prevent persons passing along the highway from driving off into it. But the court, in a well considered opinion, overruled the position, and denied that any such duty was imposed by law upon the town. There is nothing in this case in conflict with *Burnham v. The City of Boston,* 10 Allen, 290. In the latter case there was an excavation within the limits of one of the streets of the city, and it appeared that persons were accustomed to pass on a way, either public or private, over adjacent lots, into the street where the excavation existed. The city had provided no barrier for the purpose of preventing persons who passed over the way from the adjoining lots into the street from falling into the excavation. And it was held that the city had unreasonably omitted to erect such a barrier, and was guilty of negligence for which it was liable to a person injured in consequence of the excavation. Substantially the same doctrine was laid down by this court in *The City of Milwaukee v. Davis,* 6 Wis., 377. See also *Seward v. The Town of Milford,* 21 id., 485. But in these cases the defect was one in the highway itself, and the danger to be guarded against was not distant from the street, as in the case

before us. Here the danger was not any danger upon any public highway, and we see no ground for holding that the town should have adopted measures to prevent persons from leaving the highway and crossing this private bridge. It seems to us that whoever went there, under the circumstances, went at his own risk, and must abide the consequences. These views are decisive of this case, and require a reversal of the judgment.

*By the Court.* — The judgment of the the circuit court is reversed, and a new trial ordered.

38 463
77 254

38 463
78 211

38 463
99 80

38 463
d111 ¹631
111 636