Colby and wife vs. City of Beaver Dam.

---

## Colby and wife vs. City of Beaver Dam.

Municipal Corporations: Sidewalks. (1) *City liable for defective sidewalk.* (2) *Power and duty of city of Beaver Dam under its charter.* (3) *Proof of publication of sidewalk ordinance.* (4) *Whether city can take advantage of irregularities in ordinance after using sidewalk.* (5) *When knowledge by city of defect presumed.*

1. The *liability of a city* for injuries to the person, resulting from a defective *sidewalk* which the city was bound to repair, is settled and no longer open to discussion in this court.

2. The charter of the defendant city (P. & L. Laws of 1871, ch. 224), after conferring upon the common council expressly the power to direct the manner in which sidewalks shall be constructed in the first instance by the lot owner, and to cause them to be built if the latter shall neglect to do so, further provides that "whenever the street commissioner shall deem it necessary to repair any sidewalk *constructed by said city* within its limits," he shall direct the owner or occupant of the adjoining lot to make such repair in a time and man-

ner to be prescribed by the commissioner, and, in case of his neglect, shall cause the same to be made at the expense of the lot, etc. *Held*,

(1.) That the power to direct repairs here given extends to *all sidewalks which the city has ordered* to be built, and over which it exercises care and control.

(2.) That under this charter the city is *bound to repair* any defect in such a walk, which endangers the safety of travelers.

3. Where the question is, whether a *city ordinance* directing the construction of a sidewalk *was ever published*, so as to be in force, the fact that the *affidavit of publication* in a newspaper made by the publisher and attached to a copy of the ordinance, calls the same a "notice," does not vitiate the proof.

4. Where a walk was constructed in pursuance of what purported to be an ordinance of the city, and the city has recognized and used it for several years, *quære* whether, in an action for injuries caused by a defect in such walk, the city could take advantage of any irregularities affecting the validity of the ordinance.

5. There was no error in instructing the jury that if the defect in a sidewalk which caused the injury complained of, had *existed for such a length of time* that by the exercise of reasonable care and diligence the city authorities would have discovered it, *knowledge* on their part *might be presumed;* there being evidence which rendered such instruction pertinent.

APPEAL from the Circuit Court for *Dodge* County.

The action was brought by *George Colby* and *Olive R. Colby*, his wife, to recover damages for injuries to the latter caused by the defective condition of a sidewalk in the *City of Beaver Dam*. At the time of the accident, in May, 1871, *Mrs. Colby* was walking on a plank or board sidewalk on College Street in said city, accompanied by her daughter, the mother being on the outer edge of the walk and the daughter on the inner side, when the latter stepped upon one of the planks or boards, which displaced it, causing the other end to tip up, and throwing *Mrs. Colby* to the ground, injuring her knee, and causing some other injuries. It appeared in evidence that the sidewalk had been in a defective and dangerous condition during the previous summer, and that it had been exceedingly defective during the spring of 1871. Some of the planks were loose, and the stringers gone, and

some of the stringers were decayed so that nails would not hold. Some of the boards had been set up against the fence, others were lying by the side of the walk, and some were lying loose upon the ground, not attached to the stringers. Several witnesses testified to having been tripped up by loose and defective planks in the sidewalk at and near the place of the accident at various times during the year preceding the injury to *Mrs. Colby.* Plaintiffs' counsel offered in evidence ordinances of the common council of the city, passed in 1863, establishing the grade of College Street, and requiring the construction of a sidewalk, which were objected to on the ground, among others, that there was no sufficient proof of their publication, the affidavit of the publisher of the paper in which they appeared designating them as "printed notices," and not as ordinances. The court overruled the objection and admitted the ordinances in evidence. Defendant moved for a nonsuit, upon the ground that there was no proof, either, (1) that the walk was out of repair; (2) that the city had notice of the fact; or (3) that the city ever ordered the walk to be built, or had any control over it. The motion was denied. Defendant produced as witnesses two different mayors of the city and several aldermen, all of whom testified that they had known the place where the accident occurred, and had passed it occasionally during the year preceding the accident, but knew nothing of the sidewalk being defective, and had never been notified of any such defects.

Verdict for plaintiff for $750 damages; and, a motion for a new trial having been denied, defendant appealed from a judgment upon the verdict.

*Elwell & Lander*, for appellant, argued that the only authority conferred by the city charter upon the common council in relation to streets and sidewalks is found in chapter VI of the charter. Section 6 of this chapter provides that sidewalks shall be constructed upon the established grade, in such manner as the council shall direct. Section 7 provides that when the street

commissioners shall deem it necessary to repair any sidewalk constructed by the city, when it is out of order, he shall direct the owner or occupant of the ground adjoining the walk to repair the same, and, if not done in the time and manner prescribed, the commissioner shall cause it to be done at the expense of the lots. There is no provision requiring the council or the street commissioner to make or repair sidewalks, nor any duty imposed upon them, except when the commissioner shall deem it necessary to repair any walk constructed by the city; and it nowhere appears whether this walk was constructed by the city or by an individual. Even though the council may have attempted to pass an ordinance requiring the walk to be made, yet that created no liability, if they did not do it, and therefore the city is not liable to any one for injuries received through its defects. *Mayor of Albany v. Cunliff*, 2 Coms., 165. The charter confers a power, but does not impose a duty, to repair the sidewalks; and unless an absolute duty is imposed, no action will lie for injuries sustained through a failure to do so. *Peck v. Batavia*, 32 Barb., 634. Moreover, a new trial should have been granted for the reason that the city authorities had no notice that the walk was out of repairs, which brings the case within the rule in *Goodnough v. Oshkosh*, 24 Wis., 549.

*E. P. Smith* and *A. Scott Sloan, contra,* contended that there was sufficient notice to the city, either actual or constructive, of the defective condition of the sidewalk, in time to have repaired it and prevented the accident. The evidence demonstrated that the defendant had the means of knowledge, and that if it was ignorant it was through its own negligence. An examination by the city officers at any time for a year prior to the accident would have led them, if they had done their duty, to cause an instant and thorough repair of the walk.

COLE, J. The liability of a city for damages resulting from a defective walk which such city under its charter was bound to keep in repair, has been so frequently affirmed in this court

that the law upon that question may be deemed settled. We have not been referred to any provisions in the charter of the defendant which exempt it from the operation of the general rule. Without dwelling upon the point, therefore, we assume that the defendant was bound by law to keep its streets, and such sidewalks as it had ordered and adopted, in proper repair for the safe and convenient passage of all persons having occasion to pass over them. And if it has neglected to perform that duty, and has failed to repair a sidewalk after notice of the defect, it is liable for injuries occasioned by the defect and insufficiency of the sidewalk. This proposition is not open for discussion in this court; and the only question is, whether there was any error in the rulings of the court below which should reverse the judgment. On the trial, the plaintiffs offered in evidence two ordinances adopted by the common council in the months of June and August, 1863, establishing the grade and for the construction of a sidewalk on that portion of College Street where the plaintiff *Mrs. Colby* was injured. The admission of these ordinances in evidence was objected to, on the ground that it did not appear that they had ever been published and recorded as required by the provisions of the city charter. In point of fact it did appear that both ordinances were published in a weekly newspaper, and that they were recorded in the book of ordinances of the city. It is true, the publisher of the newspaper, in the affidavit constituting the proof of publication, calls them "*notices.*" In a certain sense they were notices. But the fact that the affidavit speaks of them as "*notices,*" instead of using the more technical term "*ordinances,*" does not vitiate the proof of publication. There were no irregularities that we can discover in the ordinances establishing the grade of the street and directing the construction of the sidewalk; and if there were, it is questionable if the city could take advantage of them after having recognized the walk and used it for several years. And under the provisions of its charter we think the city was bound to repair any

defect in the walk which endangered the safety of travelers. Express power is conferred upon the common council to lay out streets, to establish grades, and to direct the manner in which sidewalks shall be constructed in the first instance; and when repairs become necessary, the street commissioner is required to see them made. It is said that the city authorities had no power, under its charter, to repair a sidewalk which was unsafe and insufficient, or to direct it to be repaired, unless it was one *constructed* by the city. Sec. 7, ch. VI, provided that whenever the street commissioner should deem it necessary to repair any sidewalk constructed by the city within its limits, when it was out of order, the commissioner should direct the owner or occupant of the lot adjoining the walk to repair it; and if the repairs were not made within the time and according to the manner prescribed, the commissioner was to cause them to be made at the expense of the lot. Ch. 224, P. & L. Laws of 1871. This applied to all sidewalks which the city had ordered to be built and over which it exercised care and control. The doctrine laid down in the cases of *The Mayor, etc., of Albany v. Cunliff*, 2 Coms., 165, and *Peck v. The Village of Batavia*, 32 Barb., 634, to which we are referred by the counsel for the defendant, has no application. In the former case, while the city built the bridge, yet the " Pier Company " had the care and control of it, and were bound to keep it in repair. And the remedy, to a person injured in consequence of the negligent and defective manner in which the bridge was built, was held to be against the owners, who were bound to maintain and keep the bridge in repair. In the other case the court decided that it was nowhere in the village charter made the duty, *imperative* or *discretionary*, of the corporation, to make and repair the sidewalk; and therefore that the corporation was not liable in damages to an individual for injuries sustained in consequence of the defective condition of a sidewalk. The imperative duty was imposed upon the defendant by the provisions of its char-

ter, to keep its sidewalks in a safe condition ; and it is answerable for an actionable defect in them.

In this case it is claimed that a new trial should have been granted, for the reason that the city authorities had no notice that the walk was out of repair.

There was testimony given on the part of the plaintiffs which tended very strongly to show that the sidewalk, where *Mrs. Colby* was injured, had been in a dangerous and defective condition for a long time ; that the planks were loose, and the stringers upon which the planks were laid were almost entirely decayed, so that they would not hold a nail ; and that the officers of the city had actual notice of its condition long enough before the accident to have repaired it. The court directed the jury that they must find from the evidence, either that the city authorities had actual knowledge of the defect in the walk, or that it had existed for such a length of time that, by the exercise of reasonable care and diligence, the authorities would have discovered it; and that in the latter case knowledge might be presumed. This was substantially the rule laid down in *Goodnough v. Oshkosh*, 24 Wis., 549. The insufficiency in the walk was of such a character that the slightest attention on the part of the city officers would have enabled them to see it. And the evidence tends to prove that it had been in this unsafe condition for many months. There was ample testimony from which the jury might have found that the city authorities had actual knowledge that the walk was out of repair ; and the city must be held liable for damages caused by their neglect to perform their duty. This disposes of all the questions in the case which we deem it necessary to notice.

*By the Court.*—The judgment of the circuit court is affirmed.