## JOHNSON VS. THE CITY OF MILWAUKEE.

CITIES: HIGHWAYS. *Liability of city for condition of actual street crossing, permitted to be used as a thoroughfare.*

In an action for injuries caused by the defective condition of a foot-bridge or apron crossing a gutter in a city street, it appeared that the apron was built by the owner of adjoining property, without consent of the city, near to but not directly in the line of a street crossing; and that the city had never formally adopted it, nor made any repairs upon it; but there was evidence that it had existed there, and been actually used as part of a public thoroughfare, for a considerable length of time, with knowledge of the city and without objection on its part. · *Held,* that proof of these facts would create a presumption that the city had adopted the apron as part of the street crossing, and had become liable for injuries caused by a defective condition of the apron, of which it had notice; and that the continuance of such condition for several weeks would create a presumption of notice.

APPEAL from the County Court of *Milwaukee* County.

Action for injuries to the plaintiff's person alleged to have been caused by the defective condition of a plank platform, or bridge, over the gutter, forming part of a cross-walk or crossing running from the Fourth ward market to the sidewalk on the west side of Second street, in the city of Milwaukee. The complaint alleges that said cross-walk (including said bridge or platform), as well as the streets immediately adjacent thereto, were at the time of the accident thoroughfares of a public character, and were so used, treated and recognized by defendant and by all persons, and were much traveled by people on foot and otherwise, and were the usual routes of travel at those points, and were in the central part of the city. It is alleged that said bridge or platform has a steep pitch downward from said sidewalk; that the cleats originally fastened across it at proper distances to prevent travelers from slipping and falling, and which ought to have been kept in proper repair and condition, had become loose, worn out and broken, so that some of them were sprung upwards, while

remaining fastened at the ends; that the bridge had remained in this unsafe condition for months before the injuries complained of; and that defendant and its officers knew, or ought to have known, its condition, and were chargeable with great carelessness for not keeping it in repair. It is then alleged that while plaintiff was attempting to walk on said bridge from said sidewalk towards said market, his left foot was caught under and against one of said sprung and broken cleats, and he was thrown down, and had his right leg broken, etc., and that this occurred without fault on his part.

The answer, among other things, denies that the platform or bridge described in the complaint was ever a public thoroughfare, or was so treated or recognized by defendant; denies that said bridge was constructed, or cleats fastened thereto, by the defendant, or by any person on its behalf or by its order; and denies all allegations of negligence on the part of the city and its officers, in respect thereto.

The evidence given at the trial will not be stated. The instructions asked by the plaintiff, and refused, and the special verdict, will sufficiently appear from the opinion. There was no general verdict. Both parties moved for judgment upon the verdict. The court rendered judgment for the defendant; and plaintiff appealed.

For the appellant, there was a brief by *Geo. W. & Chas. W. Lakin*, and oral argument by *Geo. W. Lakin*.

*D. H. Johnson*, City Attorney, for the respondent:

On plaintiff's own showing, the platform in question is not a continuation or extension of the cross-walk established at that point, but goes out to meet it at an angle of about thirty degrees, and is at right angles with the only public walk it touches. It was put in place about two years before the accident by Fisher, the proprietor of the lot in front of which it stands, and has ever since been maintained and kept in repair by him. The city and its officers never had anything to do with it. If the city is to be held liable for the condition of

this merely private platform, merely because people have chosen to use it as a thoroughfare, it is a very serious matter for the corporation. Innumerable unauthorized thoroughfares exist in that city, and they are liable to be opened every hour. A short cut across a vacant lot is discovered, and straightway it becomes a thoroughfare. In many localities the whole tide of foot-travel crosses the street diagonally, instead of going around by the established crossings. In many places private platforms or bridges have been thrown across the gutters by lot-owners for their own accommodation or that of their customers. When any distance can be saved by using these instead of the established crossings, they too become thoroughfares. It is difficult to discover any principle upon which the city can be held liable for the condition of these unauthorized ways. In the absence of a statute expressly requiring a city to keep a given way or class of ways in repair, its liability for defects in such ways is deduced from its authority to control them and to make or mend them at public expense. In such cases authority and responsibility are coëxtensive. The city of Milwaukee had certainly no authority to interfere with Fisher's platform, except to abate it as a nuisance if it obstructed the street; the city officers had no authority to expend public money in keeping that platform in repair; and therefore it seems obvious that the city was not liable for any defect therein.

COLE, J. We are of the opinion that some of the instructions asked on the part of the plaintiff in this case were proper, and should have been given as requested. For instance, the first instruction, which was to the effect that if the jury should be satisfied, from the testimony, that, before and at the time of the accident, the general line and route for travelers on foot was over the place and crossing where the accident happened, and the crossing, including the place where the accident happened, was in continual use as a thoroughfare for travelers

going back and forth, and the same was there several weeks or months before the accident, then, so far as this case was concerned, the question as to who made the crossing or any part of it, or placed it where it was, is immaterial, and that the plaintiff was under no obligation to ascertain or inquire who built the crossing or cross-walk, or how it came there. This instruction was applicable to the testimony; for it cannot be denied that there was abundant evidence tending to prove, and from which the jury might have found, that the public travel for persons on foot passed over the cross-walk which leads from the fourth ward market, in a northwesterly direction, to the sidewalk near the junction of Second and West Water streets, and over the platform or bridge where the plaintiff fell and broke his leg. If that crossing, including this bridge, platform or apron, as it is called, was in fact a thoroughfare in constant use by the public, the city was bound to keep it in repair, and was responsible to a person injured by reason of its failure to perform that duty, whether the city originally built the bridge or not. The correctness of this view would seem to be too obvious to need comment or illustration. For surely the responsibility or irresponsibility of the city to keep a thoroughfare, or, in other words, a public crossing, in repair, cannot be made to rest or depend upon the fact that the city built it in the first place, or authorized it to be built. And so, if the bridge or apron was originally built by the owner of the adjoining lot without objection on the part of the city, and the city suffered it to remain and to be used by the public as a public way or crossing, the presumption would be that the city had adopted the structure as a part of the cross-walk. Under these circumstances the city would certainly be liable for an injury occurring by reason of the bridge or platform being in a dangerous condition. The plaintiff was entitled, therefore, to have the question submitted, whether the bridge or apron was in fact a public thoroughfare over which a considerable number of persons having occasion

to cross at that place usually passed. For, if it was such a thoroughfare, it is very evident the city was under obligation to keep it in a safe condition for public use and travel. There is a strong implication in the charge as given, that if the bridge or apron was originally constructed by the owner of the adjoining lot, then, though it were used by the public as a crosswalk, yet the city would not be liable for defects in the same, unless the city authorities had recognized it in some way, as by making repairs upon it. But we think the fact that the city authorities permitted the bridge or platform to be used by the public as a cross-walk, would, under the circumstances, be sufficient to warrant the inference that the city had adopted it. And if the bridge or apron was really a thoroughfare, that is, a place in constant use by travelers going back and forth at that crossing, the city was liable for its unsafe condition.

The remarks already made are deemed sufficient to show that the court erred in refusing to give the second and fourth instructions asked, as well as the first. These instructions are as follows:

" 2. If the jury find, from the testimony, that the cross-walk or crossing, including the place where the accident is alleged to have happened, or any part of it, was defective, out of repair, or in a condition dangerous for travelers over the same, and that the same was in such defective or dangerous condition for several weeks or months before the accident, and continued so to be up to the time the accident happened, then the city and its officers are presumed to have had knowledge or notice of such defects and dangerous condition of the crossing or cross-walk, and no actual notice was necessary to make the city liable. That is to say, in such case the city is presumed to have had notice."

" 4. If the jury are satisfied, from the testimony, that the apron or bridge where the plaintiff fell and broke his leg, has been there, and had been there a long time, say a year or six months, before the accident occurred, without any objection

on the part of the city, then the city is presumed to have acquiesced in the structure and to have adopted it, and must be held liable for damages by reason of defects, just the same as if the city authorities had actually ordered it to be placed there."

·These instructions as to when notice to the defendant of the defect which caused the injury might be presumed, and in regard to the facts from which the adoption of the apron as a part of the cross-walk might reasonably be inferred, were applicable to the case, and should have been given.

There was a special verdict. In answer to questions submitted, the jury found, among other things, that at the time of the accident there was a cross-walk from the fourth ward market northwesterly across to the sidewalk of Second street; that this cross-walk was supplemented at the *southeast* end by an apron; that this apron on the *west* side of Second street was *not* a part of such cross-walk; that the plaintiff sustained the injury complained of while passing over this apron, which was in a defective condition; and that the plaintiff was in the exercise of ordinary care and diligence when crossing the same. The jury also found that the plaintiff sustained $1,000 damages in consequence of the injury. The learned counsel for the plaintiff insists that the jury really found all the material issues against the defendant, and that this court, on reversing the judgment, should send the cause back with directions to the county court to render judgment for the plaintiff for the amount of the damages he sustained. We cannot adopt this suggestion, because it seems to us that the question whether the apron had been so used by the public for the purposes of a crossing as to have become a thoroughfare or public way, was not fairly submitted to and passed upon by the jury. The affirmation of that question is the basis of the defendant's responsibility in the matter.

*By the Court.* — The judgment of the county court is reversed, and a new trial ordered.