## James vs. The City of Portage.

*March 10 — March 30, 1880.*

CITIES: HIGHWAYS.   *What sidewalks cities are bound to keep in repair.*

In cities of this state, the use, for a series of years, by the people traveling on foot along a public highway, of a part of such highway as a sidewalk or foot path, on one or both sides of the carriage way, constitutes such path or walk a portion of the "traveled part" of such highway, which the city is bound to keep in repair and in safe condition for such use, and renders the city liable for injuries resulting from a neglect of that duty.

APPEAL from the Circuit Court for *Columbia* County.

Defendant appealed from a judgment in plaintiff's favor. The case is stated in the opinion.

For the appellant, there was a brief by *E. S. Baker*, its attorney, with *A. Scott Sloan*, of counsel, and oral argument by *Mr. Sloan.*

For the respondent, there was a brief by *Harvey Briggs*, his attorney, with *J. G. Flanders*, of counsel, and oral argument by *Mr. Flanders*.

TAYLOR, J.   The plaintiff brought his action to recover damages against the appellant for an injury sustained by him, which he alleges was caused by a defect in the sidewalk of one of the public streets of said city, which sidewalk, he also alleges, it was the duty of said city to keep in repair.

There is no question made as to the fact that the sidewalk was out of repair, nor is it seriously contended that the injury of which the plaintiff complains was not caused by that fact. The real question in the case is, whether the city is liable for an injury caused by the want of repair of a sidewalk in one of its public streets, when such sidewalk has neither been constructed nor ordered to be constructed by the city or its proper officers, and when no work has been done or ordered to be

done ·by the city or its officers in the construction, mainte-
nance or repair of such walk.

The evidence shows that the· place where the accident oc-
curred was within the limits of one of the streets designated
upon the city plat as· a public street; that it had been used as
a public street of said city for several years before the time of
the accident, for travelers on foot and with teams and car-
riages; that during all those years that part of the street
along the east side thereof, and where the accident occurred,
had been used as a footway or sidewalk for persons traveling
on foot along said street; that portions of said footway or
sidewalk in the vicinity of the place where the accident hap-
pened, had been planked by the owners of the adjacent lots as
a sidewalk; and that in other places, and at the place where
the accident happened, the walk had never been planked as a
sidewalk, but the surface of the ground remained very nearly
in its natural state.    There was no proof tending to show·that
the portions of the sidewalk which had been planked by the
adjacent lot-owners had been so planked by the order or
direction of the city or its officers; and we think, for the pur-
poses of this case, it must be assumed that such planking was
done by the owners without any direction or order from the
city or its authorities, and that it must also be assumed that
the city never had done any work upon the sidewalk in the
immediate vicinity of the place where the accident happened.

Under this state of the evidence, it is insisted by the learned
counsel for the appellant that the city cannot be held respon-
sible for any injury occurring by reason of any defect or want
of repairs in such footway or sidewalk; that the .mere fact that
the travelers on foot in one of the small cities of the state had
for years traveled along the side of one of its public streets, in
the place where it is usual and customary for travelers on foot
to travel when passing along such streets, does not impose any
duty upon such.city to keep such part of the street so traveled
by footmen in repair.    After a careful consideration of the

case, we think the learned counsel is mistaken as to the extent of the duty imposed by the laws of this state upon the cities thereof to keep their streets in repair. It must be admitted that the charter of the city does not expressly charge the city with the duty of maintaining sidewalks along the sides of the public streets of such city. The charter, in fact, provides that the city shall not have authority to grade or gravel any street, or construct any sidewalks along its streets, without the consent of two-thirds of the adjacent lot-owners, when the expense thereof is to be charged to such lot-owners. Chapter 93, P. & L. Laws of 1858, subch. VI, § 1. But the charter provides for the collection of a poll tax for the purpose of keeping its streets in repair, and also allows the city to levy a tax for that purpose, in the same manner and to the same extent that towns may do. See section 7, subch. VII of said ch. 93, P. & L. Laws of 1858.

The duty of the city to keep its streets in repair, and the consequent liability to travelers injured by reason of the want of such repair, are imposed by the general laws of the state, and not by the city charter. Section 120, ch. 19, R. S. 1858; Tay. Stats., p. 513, § 156. This court has repeatedly held that this section applies to all cities as well as towns situate in this state. *Kittridge v. Milwaukee*, 26 Wis., 46; *Harper v. Milwaukee*, 30 Wis., 365; *Weisenberg v. Appleton*, 26 Wis., 56; *Johnson v. Milwaukee*, 46 Wis., 568; *Prideaux v. Mineral Point*, 43 Wis., 513; *Colby v. Beaver Dam*, 34 Wis., 285. The revision of 1878 makes that certain by express statute, which this court had rendered certain by numerous decisions construing the former law. Section 1339, R. S. 1878. It having been settled beyond controversy that the cities are responsible for any injury occurring to travelers by reason of any defect in their public streets, the only questions to consider are, whether the place where the injury was sustained in this case was within one of the public streets of said city; whether the particular place where said accident occurred

within said street was a part thereof which the city was bound to keep in repair; and, if so, whether that place was out of repair, and such want of repair caused the injury complained of.

We think all these questions were properly answered in the affirmative by the jury, upon sufficient evidence, and the only real contention made by the learned counsel for the appellant, in his argument in this court, is, that the particular place where the accident happened and the defect existed was not a part of the public highway which the city was bound to keep in repair. The argument is, that the city was under no obligation to provide a sidewalk or footway alongside of the carriageway of one of its public streets for the convenience of foot travelers; and that, as the city had not made or ordered the sidewalk or footway, used by the travelers on foot, to be made, and had not assumed to control or repair the same, it was in no way obligated to see that the same was reasonably safe for the passage of travelers on foot; that the adoption of that part of the street as a footway by the public, and its use as such for a series of years, imposed no duty upon the city to keep that particular part of the street in repair. It is urged that, outside of the cities, towns would not be required to keep a footway in repair for the convenience of travelers on foot alongside of one of their public highways, and that no length of use of a footway alongside of such a highway would render the town liable for an injury occurring from a defect therein, if that part of the highway prepared for and used by carriages was in a safe condition for the use of footmen.

For the purposes of this case it may be admitted that a town would not be liable in such case; still such admission is by no means decisive of the present case. In towns there are comparatively few persons who travel on foot, and it is not necessary that a particular portion of a highway should be set apart for the use of foot travelers. In cities, even in small ones, it is customary and highly convenient, if not absolutely

necessary, that a portion of the public street should be set apart for the use of footmen; and it is an exception to the general rule when a public street in a city has not a portion of it set aside exclusively for travelers on foot. And, by a reference to any city charter passed by the legislature of this state, it will be found that such charters uniformly contain provision for making and maintaining sidewalks along the sides of the public streets of such cities, thus showing that it is contemplated that in cities sidewalks for foot travelers will be maintained alongside some, if not all, of the public streets in such cities.

If, then, a street in a city is adopted or laid out and opened as a public highway for all kinds of travel thereon, and, without any direction or interference of the city or its authorities, a portion thereof alongside of the part used for teams and carriages is used by the people who travel on foot as a footway or sidewalk, that part so used becomes as much a part of the traveled part of such street as that used for the passage of teams and carriages; and all the cases hold that towns and cities are liable for defects in the traveled part of the highway, when such traveled part is within the limits of the way, unless some barrier is put up or warning given to the public to avoid such traveled portion, or direction given to use only that part of the way which the town has prepared for the public use. See *Seward v. The Town of Milford*, 21 Wis., 485; *Kelley v. The Town of Fond du Lac*, 31 Wis., 179–186; *Johnson v. City of Milwaukee*, 46 Wis., 568. In this last case it is expressly held that if a portion of a public highway becomes a thoroughfare, whether by the action of the city authorities or by that of private individuals, it becomes the duty of the city to see that it is kept in safe condition. In that case a private person had placed a bridge over the gutter on his side of the street opposite his place of business for the purpose of attracting persons crossing the street to his place, and, such bridge being out of repair, the plaintiff fell

on the same and was injured.  This court sustained a verdict against the city, and Justice COLE, delivering the opinion, says:  " If that crossing, including this bridge, platform or apron, as it is called, was in fact a thoroughfare in constant use ·by the public, the city was bound to keep it in repair, and was responsible to a person injured by reason of its failure to perform that duty, whether the city originally built the bridge or not.  The correctness of this view would seem to be too obvious to need comment or illustration;  for surely the responsibility or irresponsibility of the city to keep a thoroughfare, or, in other words, a public crossing, in repair, cannot be made to rest or depend upon the fact that the city built it in the first place, or authorized it to be built."  See, also, *Green v. The Town of Bridge Creek*, 38 Wis., 449, 461; *Houfe v. Town of Fulton*, 34 Wis., 608, 615; *Matthews v. Baraboo*, 39 Wis., 674, 677.

We hold, therefore, that in cities, where it is customary for travelers on foot to use for that purpose a portion of the public streets on one or both sides of the track which is used for carriages and teams, as a footway or sidewalk, the use of such footway or sidewalk by the people traveling along a public street in any such city, for a series of years, constitutes such footway or sidewalk a part of the traveled part of such street, and imposes upon the city the duty of keeping such footway or sidewalk in repair; and if the same becomes so defective as to render travel over the same unsafe, and the city takes no measures to warn the public against the use of such footway, the city becomes liable to any traveler who may suffer an injury from such defective footway without his fault.

We have examined the other exceptions taken to the instructions given by the circuit judge, and the exceptions taken to the refusal of the judge to give the instructions asked by the defendant, and find no errors which would justify us in reversing the judgment.

*By the Court.*—The judgment of the circuit court is affirmed.