JANUARY TERM, 1880. 669

Bishop and wife vs. The City of Centralia.

BISHOP and wife vs. THE CITY OF CENTRALIA.

*May 20 — June 23, 1880.*

HIGHWAYS. *Whether city or county bound to keep in repair a certain highway.*

1. Where a county purchases of private owners a bridge, one end of which abuts upon a city, and the approach to the bridge on the city side has been constructed over land not included in any city highway, unless the city adopts such approach as one of its highways, the county only, and not the city, is under obligation to keep in repair not only the bridge itself *(State ex rel. Neeves v. Supervisors,* 41 Wis., 28), but also said approach, and is liable for injuries caused by its defective condition.

2. On proof, in such a case, that the city end of the bridge is connected by the approach with a public street of the city distant over ninety feet; that since the purchase of the bridge by the county, the latter has paid rent to a private owner for the land over which the approach is constructed; that the city street commissioners have filled in a few loads of gravel at the end of the bridge, on this approach, and, before the accident here in question, had rebuilt or repaired the sidewalk on such approach, at or near the place of the accident; but that this was done without any express direction from the city authorities: *Held,* that it was at least error to instruct the jury *as matter of law,* that the city had adopted the approach as one of its highways.

3. The city is not rendered liable by the mere fact that it had *permitted* the use of the sidewalk by the public for several years, the same not being within the limits of any recognized city highway. *Johnson v. Milwaukee,* 46 Wis., 568, and *James v. Portage,* 48 id., 677, distinguished.

APPEAL from the Circuit Court for *Wood* County.

The case is thus stated by Mr. Justice TAYLOR:

"This action was brought for the purpose of recovering damages on account of an injury sustained by the plaintiff *Fanny J. Bishop,* wife of the plaintiff *Harry Bishop,* by falling from a sidewalk in said city. The evidence in the case shows that the injury complained of by the plaintiffs was received whilst the plaintiff *Fanny J. Bishop* was passing along a sidewalk leading from Front street, in said city, to the west end of the bridge crossing the Wisconsin river, and more

than ten feet east of the east line of said Front street. The undisputed' evidence shows that the bridge crossing the river at that place was built by a corporation, which was authorized to build the same, and receive tolls of persons and teams passing over the same, under the provisions of chapter 178, P. and L. Laws of 1865; that, previous to the building of said bridge and the opening of the same for travel by said company, in 1867, there was no street leading east from the east side of Front street to the river; that the street leading east from Front street to the east end of the bridge was opened to the public by said bridge company over private property, as an approach to said bridge from the east side of Front street; and that said company paid rent to the owner of the land over which said approach passed, so long as the bridge was owned by it.

" The evidence further shows that in July, 1873, the bridge company sold said bridge to the county of Wood, and said county purchased the same under the authority given to said county by section 6 of said' ch. 178, Laws of 1865; and that since the purchase of said bridge by said county it has paid rent to the administrator of the deceased owner of the lands over which the said approach to said bridge passes. The evidence also shows that it is ninety-two feet from the east line of Front street to the west end of the bridge; that previous to the building of the bridge, the east line of Front street ran along near where the bank of the river commenced to slope to the water; and that the street or approach to the bridge from Front street was made by the bridge company by filling in from the east line of Front street to the abutment of the bridge. The city of Centralia was incorporated in 1874. The evidence also shows that the street commissioners for said city have filled in a few loads of gravel at the end of the bridge on this approach, and that they had rebuilt or repaired the sidewalk at or near the place where the accident happened, before it happened; but that the work was done without any express direction from the city authorities. The evidence tended to

show that the accident was caused by the want of a guard or hand-rail along the sidewalk, which was at that place about two feet above the level of the ground; and that, in passing along in the night time, the plaintiff fell from the walk and was injured."

The court refused the following among other instructions asked by the defendant:

"1. It is admitted that the place where the accident happened, is within the limits of the city of Centralia, and is used by the public as an approach to the Wood county bridge, which is a public bridge owned by Wood county; but these facts do not of themselves make the city liable to maintain and repair said premises as a public street, or to pay damages for injuries which may happen by reason of the insufficiency or want of repair of said approach. It must appear further, that the approach or walk thereon in question is a public street or walk within the limits of said city, which it is liable to maintain, which it had power and authority to adopt and had adopted prior to the accident, and which had become a public highway or walk, in some way known to the law; and further, that the walk was so poorly or defectively constructed, or in such a condition, as to be unsafe for persons who might be passing over it in the night time; and of the sufficiency or insufficiency of the walk you are the judges. . . .

"2. If you find that the place where the accident happened was first opened to the public as a street by an agreement between O. Garrison and the Wood County Bridge Company, whereby said bridge company was to have the use of said premises as an approach to and landing for said bridge, and paid rent to said Garrison while said company existed, and that said premises continued during that time the private property of said Garrison, such use of said premises by said bridge company does not constitute a dedication to the public for a highway; and if you find further, that Wood county, since its purchase of said bridge in 1873, has paid rent for

said premises to the administrator of the estate of Garrison, the use of the premises by the county, under such circumstances, does not amount to a dedication to the public for a highway. While it may be, if you find such facts, a highway such as the Wood County Bridge Company or its assignee, the county of Wood, would be estopped from denying, yet it is not such a highway as the defendant city is required by law to maintain and keep in repair, although it is within the limits of said city."

There was a verdict for the plaintiffs; a new trial was refused; and defendant appealed from a judgment on the verdict.

For the appellant there was a brief signed by *J. W. Cochran*, with *Chas. M. Webb*, of counsel, and oral argument by *Mr. Cochran*. They argued, among other things, that the court erred in refusing the first instruction asked by the defendant. A municipal corporation is responsible only for defects in such roads and bridges as are public highways of the municipality, and which it is bound to repair. *Green v. Bridge Creek*, 38 Wis., 449; *Colby v. Beaver Dam*, 34 id., 285; *Mayor, etc., v. Cunliff*, 2 Coms., 165. The bridge belonged to Wood county, having been purchased under the provisions of ch. 178, P. & L. Laws of 1865; and upon the county alone rested the duty of keeping it in repair. The abutments and approaches to the bridge must be regarded as constituting a part thereof. The defendant city had no power and no duty in the premises. *State v. Sup'rs of Wood Co.*, 41 Wis., 28. The rule of law expressed in *Johnson v. Milwaukee*, 46 Wis., 568, is not applicable to this case. The second instruction asked should have been given. *Tupper v. Huson*, 46 Wis., 646; *Houfe v. Fulton*, 34 id., 608.

For the respondent there was a brief by *Gardner & Gaynor*, and oral argument by *Mr. Gardner*. They contended, *inter alia*, that, the *locus in quo* having been used as a public street for more than ten years prior to the accident, without

interruption, the city is estopped, by its acquiescence in such use, from denying the legality of the street or sidewalk, but it will be presumed to have adopted them. *Buchanan v. Curtis*, 25 Wis., 99; *Houfe v. Fulton*, 34 id., 620; *Johnson v. Milwaukee*, 46 id., 568; *James v. Portage*, 48 id., 677. A similar estoppel results from the fact that defendant performed work on this approach, and built thereon the sidewalk from the defect in which the injury resulted, and allowed the public to use the same. *Codner v. Bradford*, 3 Pin., 259; *Blute v. Scribner*, 23 Wis., 357; *Benedict v. Fond du Lac*, 44 id., 495; *Sewell v. Cohoes*, 75 N. Y., 45. The defendant cannot, therefore, be heard to say that the possession and control thus exercised by it were without right and unlawful. *Stark v. Lancaster*, 57 N. H., 88; *Phelps v. Mankato*, 23 Minn., 276; *City of Aurora v. Colshire*, 55 Ind., 484; *Mayor v. Sheffield*, 4 Wall., 189. The defendant is primarily liable even though it may have a right of action over against the county. 2 Hilliard on Torts, 399, 400; Dillon on M. C., § 796; *City of Oconto v. R'y Co.*, 44 Wis., 231; *Hammond v. Mukwa*, 40 id., 35; *Phillips v. Veazie*, 40 Me., 96; *Batty v. Duxbury*, 24 Vt., 158; *Elliot v. Concord*, 7 Fost., 208.

TAYLOR, J. The real question in the case, and the only one upon which the appellant relies for a reversal of the judgment, is that the sidewalk where the accident happened was not in one of the public streets of the city, which it was bound by law to keep in a safe condition, but that such street sidewalk was a part of the bridge owned by the county of Wood, and for the sufficiency of which said county was alone responsible. The county purchased said bridge of the bridge company in 1873, under the provisions of section 6, ch. 178, Laws of 1865. Said section reads as follows: "Section 6. The county of Wood shall have the right, at any time after five years from the time fixed by this act for the completion of said bridge, to purchase the same by paying to the said com-

pany the value at which the same shall then be appraised, to be ascertained by three disinterested appraisers, not residents of Wood county, one of whom shall be elected by said company, another by said county, and the third by the two so chosen, who, upon their oaths, shall appraise the said bridge and its appurtenances, including toll house and the soil or landing place on which the ends of said bridge shall rest, and the right of way thereto, if the same shall belong to said company, at their fair value; and, upon the payment by said county to said company of the appraised value of said property, as ascertained by the award, in writing, of said appraisers or a majority of them, within one year after the date of said award, the said bridge shall become a free bridge; but the franchise hereby granted to said company shall continue until said county shall purchase said bridge."

The county of Wood having purchased the bridge and its appurtenances under the provisions of this section, this court held, in the case of *The State ex rel. Neeves v. The Supervisors of Wood County*, 41 Wis., 28, that it became the duty of the county to keep the same in repair, notwithstanding that it was a free bridge, and, upon the application of residents and land-owners of the cities of Centralia and Grand Rapids, granted a *mandamus* to compel the county to repair the same. In that case, as in this, it was argued by the counsel for the county, that the purchase by the county did not impose any duty upon the county to keep the same in repair; that as, by the purchase, the franchise of the company to take tolls was destroyed, and the bridge became a free bridge, it became the duty of the cities within the limits of which the same was situated to keep it in repair, the same as any other highway within their limits. Justice COLE, who delivered the opinion in that case, says: "The fact that the bridge was purchased by the county and became the property of the county would seem to carry with it as an incident the right to take care of it and control it. And if the county has the right to con-

trol it as the property of the county, from the nature of the case this control and management must be exclusive. The cities of Grand Rapids and Centralia have no right to interfere with it, or to give directions for repairing it. It would seem to be self-evident that the power and right to control the bridge, to make repairs upon it and maintain it, cannot reside at the same time in the county and in the two cities. The county certainly owns the bridge, and if it were injured by a wrongdoer could maintain an action for the wrong; and, it being the property of the county, the duty of keeping it in a safe condition for the public use rests properly with the county at large." This case disposes of the question of the liability of the county to keep the bridge itself in repair for the use of the public, and removes from the city any responsibility for any damages which may accrue to individuals on account of the want of repairs of the same. The liability for injuries resulting from the want of repairs to a bridge or other highway, under our statute, rests alone upon the municipality upon which the law casts the duty of making the repairs, and not upon the mere fact that the highway is within the bounds of the municipality. This, we think, is the doctrine laid down in the case of *Houfe v. The Town of Fulton*, 34 Wis., 608–617. In that case, the late Chief Justice DIXON says: "It is, of course, a proposition generally correct, that a town is not liable for damages caused by an insufficiency, unless the place where the injury was received and the insufficiency exists, was a lawful public highway, which it was the duty of the town to keep in a state of reasonable safety and repair."

In the case of *Green v. The Town of Bridge Creek*, 38 Wis., 449, 459, the court say: "This bridge was built by volunteers, without any authority from the defendant, and at least ten rods distant from any public highway. It was erected for the accommodation of the persons who built it, though the public have likewise used it. But it is beyond the limits of any highway which the town is bound to repair, and it does

not, like that in the Houfe case, connect portions of road on each side of the creek, which were highways of the town. The town has not adopted it nor recognized it in any manner as a bridge belonging to the town. Were the bridge erected within the limits of the highway by private individuals, there would be much reason for holding that the town was bound to adopt it as a part of the highway, and keep it in repair, or remove it from the highway altogether."

Under these decisions, and especially under the decision in the case of *The State v. Supervisors of Wood County*, it is clear that if the injury complained of had been caused by want of repair of the bridge itself, there could be no recovery against the appellant city. And we are inclined to hold that for the purposes of this action the approaches to this bridge, which were made by the original company for the sole purpose of enabling the public to use the bridge when built, must be treated as a part of the bridge itself, and that the city is not liable for any injury occasioned by the want of repair of such approaches, unless it be shown that such approaches were made in a public street of such city, or unless there is satisfactory evidence that the city has adopted such approach as one of the public streets of the city.

The evidence in this case clearly establishes the fact that what is now the approach to the west end of the bridge, east of Front street, covering the place where the injury was received, never was a public street in said city, either laid out, opened or kept in repair by the city, but that the same was opened to public use by the bridge company over private property, for which the company paid rent, and that it was appurtenant to the bridge, made for its convenient use by the public, and for which the company received compensation by the tolls it was authorized to demand for the use of its bridge. Had the company still owned the bridge, and were it in the receipt of tolls for the use of the same, it could not be claimed that the city of Centralia would be under any obligation to

keep this approach to the bridge in repair. The approach, made upon private property, would be as much in the possession of the bridge company as the bridge itself; and it would be as much the duty of the company to keep it as it would be to keep the bridge in repair. As was said in the case of *State v. Supervisors*, there could be no doubt that the company in such case could recover against a wrongdoer for any injury done to such approach, for the reason that it was the proprietor and owner of the same, notwithstanding its use by the public.

Since the rights of the company were transferred to the county, the county has had a like possession and ownership of this approach to the west end of the bridge, has mainly kept the same in repair, and, as is admitted by the parties, has paid rent to the administrator of the deceased owner of the land over which the same passes, for the use of such land; and we have no doubt that it is as much the duty of the county to keep such approach in repair as it is to keep the bridge itself in repair. The case admits that this approach was never laid out or opened as a highway, either by the city or its predecessor, the town of Centralia, nor was it marked as a street upon the recorded plat of said town of Centralia; and that upon such plat there was no street designated as crossing the river east from the east line of Front street. If, therefore, this approach has become a highway of the city, which it is bound to keep in repair, it must have become so by its adoption in some other way. We are quite clear that the evidence as to the repairs done upon this approach by the street commissioners of the city is not of such a character as would justify the court in holding, as a matter of law, that the city had adopted it as a part of the street, and assumed the care and control of the same; and that in any event, under the evidence, it was a question of fact for the determination of the jury, and not of law for the court.

There does not seem to be much force in the argument that,

because the city had permitted the use of this sidewalk for several years, it should be estopped from alleging that it was not bound to keep the same in repair, and that it should be presumed the city had adopted it as its own. Whilst the original bridge company owned the bridge, and down to 1874, no presumption could arise against the city, for the reason that it would have been a trespasser if it had interfered with the use of the street or sidewalk which the company had constructed for its own use and benefit. And, under the decision of *State v. Supervisors*, the county having succeeded to all the rights of the bridge company, no presumption would arise against the city by mere acquiescence in the use of the street and sidewalk.

This case is clearly distinguished from the cases cited by the learned counsel for the respondents. The case of *Johnson v. City of Milwaukee*, 46 Wis., 568, and *James v. City of Portage*, 48 id., 677, and others, were all cases in which there was no dispute as to the fact that the *locus in quo* was within a public street of the city or town, which such city or town was by law bound to keep in repair; and, such being the admitted fact, it was held no excuse for the city or town that such street was out of repair and unsafe by reason of the acts of some third person. But in this case the contention is, whether the city is bound under any circumstances to keep the *locus in quo* in repair as a street of the city; and upon that point there was not sufficient evidence offered on the part of the respondents to justify the court in saying, as a matter of law, that the city was bound to keep the *locus in quo* in repair as one of the streets of the city. Upon the evidence as it appears in the record, we would have been satisfied had the learned circuit judge directed a verdict for the defendant.

We think the court erred in refusing to give the first and second instructions asked by the appellant, and also in giving the following instruction: "So far as you are to consider this case, I instruct you that if you find this was a public thorough-

fare, used habitually by people in passing and repassing along that street, that it was in the keeping and charge of the city of Centralia, and that, being in the charge and keeping of the city, the city was bound to see that it was safe for persons in passing and repassing along the street at all hours — in darkness as well as sunshine, in the night as well as day:" This instruction left nothing for the jury to find except the sufficiency of the sidewalk and the *quantum* of damages. There was no dispute but that the place where the accident happened was " a public thoroughfare, used habitually by the public in passing and repassing along that street." And the court says, if it was such a thoroughfare, then it was in the charge and keeping of the city, and it was bound to see that it was in sufficient repair. In our view of the case, whether it was or was not a thoroughfare is not the real question in contention; but, admitting the fact that it was a thoroughfare, the real question for the court and jury was, whether the duty of keeping it in repair was upon the city of Centralia or upon Wood county. As said above, we do not think the evidence in the case shows conclusively that the city of Centralia was bound to keep the *locus in quo* in repair, and for that reason the judgment must be reversed.

*By the Court.* — The judgment of the circuit court is reversed, and the cause remanded for a new trial.