RHEINSCHMIDT, Appellant, vs. CITY OF TOMAH, Respondent.

*November 19, 1915—February 1, 1916.*

*Municipal corporations: Injury from defect in footpath: Duty to keep in repair: Questions for jury: Sufficiency of pathway: Contributory negligence: Momentary forgetfulness of known defect.*

1. Although the sidewalk area along a public street has not been prepared by the city for public travel, long-continued use of it for such travel imposes upon the city a responsibility in respect thereto practically the same as if it were a prepared way.

2. In an action for injuries sustained by falling into a depression in what had been a footpath along a public street, the evidence as to the size and shape of the depression and its relation to a new pathway which had been made around it is *held* to make it a jury question whether the traveled way was reasonably suitable for public use.

3. Although plaintiff knew of the depression or hole into which he fell, his contributory negligence was also a question for the jury, it appearing that the accident happened at night when he suddenly met a person coming from the opposite direction, and his testimony being that he momentarily took his mind off the subject of the defect and stepped to the right to give the oncoming person the right of way, and that in doing so he went into the hole.

4. The presumption of contributory negligence arising in case of an injury sustained through failure to avoid a known defect in a street is rebuttable, and a showing of any reasonable excuse for forgetfulness is sufficient to make the question one for the jury.

APPEAL from a judgment of the circuit court for Monroe county: E. C. HIGBEE, Circuit Judge. *Reversed.*

Action to recover compensation for a personal injury.

The claim of the plaintiff was that in the defendant city a public street, known as Williams street, near its intersection with Clark street, for more than a year prior to October 20, 1913, on the south side thereof, used by pedestrians, had been unsafe for persons in the exercise of ordinary care by reason of there being a depression in the footway from eight to fourteen inches deep and twelve to eighteen inches wide; that

such condition had been known to the defendant's officers for a long time before the occurrence complained of; that on such day, plaintiff, while traveling along the footway in the exercise of due care, stepped into such depression, causing him to fall and fracture his right leg. The facts so claimed were duly pleaded with all the conditions precedent to the right to maintain an action to recover compensation for the injury.

The claim of the defendant was that there was no depression in the footway where plaintiff was injured, rendering it unsafe for use by travelers in the exercise of ordinary care; that plaintiff did not exercise such care, and that his fault resulted in the injury.

The evidence established the claim that plaintiff fell by stepping into a depression in the footway at the place alleged and was thereby seriously injured in his right leg, and that the accident occurred in the nighttime when it was too dark to enable one to observe the defect with reasonable distinctness. He testified that there was a "dug-out" in the footway several feet long with a couple of drops in it, making a hole at the deepest place eight, nine, or ten inches deep, and that people were accustomed to walk around it to the south; that he did so on the occasion in question; that he was familiar with the defect and was looking for it, but, upon meeting a person coming from the opposite direction, he momentarily took his mind off the subject in stepping aside to give way for such person to pass, and, in doing so, he went into the hole, fell upon his knee and received the injury. The person who was present when the accident occurred testified that the defect had existed for more than a year; that he stepped into the depression once himself and received an injury; that he measured the depth of the depression on the side plaintiff traveled and found it to be six inches at the first step down, increasing to nine and then to twelve inches; that the width was twenty inches, and that the "dug-out" was caused by travel and washing. There was other evidence to the same

effect.   There was a photograph of the premises indicating that the depression was, as testified to by the witnesses, several feet long with a slope on the south side.   There was evidence by a surveyor that he examined and platted the premises some time after the accident.   The result of his work was allowed in evidence against objection.   Whether the conditions were the same when he did his work as when the accident occurred was disputed.   He claimed that the bottom of the pathway was smooth through the depression; that it was well tracked and was used, in the main, for travel; that the south side sloped, and that there was some evidence of travel around the depression on such side.   The evidence indicated that the sidewalk area had never been improved; that travelers had made for themselves a pathway, and that when it became worn by travel or washing they diverged around the place.

The cause was submitted to the jury with the following result: The traveled foot-path was insufficient for public use by persons in the exercise of ordinary care.   Such conditions had existed for such length of time prior to the accident that defendant's officers, in the exercise of reasonable diligence, should have discovered and remedied the same.   Such defective condition was the proximate cause of the injury.   Plaintiff was not wanting in ordinary care which contributed to the injury.   It will require $1,000 to compensate plaintiff for the injury.

On motion the answers were changed so as to find the pathway free from actionable defect and the plaintiff guilty of contributory negligence.   The motion was granted and on the first point upon this theory: All the evidence, when rightly understood, is in substantial harmony as regards the condition of the place where the accident occurred.   The street was not much used.   No sidewalks had ever been constructed.   The pathway along the south side of the street sloped for a distance of some eighteen feet to the intersecting street.   The

bottom of the old path was substantially uniform.    The width of it varied from seventeen inches to two feet.    The greatest depth of the center of the path below the side on the south was 11.64 inches and the drop at that part was on a slope of one foot and a half.    If the plaintiff stepped off into the depression where it was the deepest, he must have taken a long side-step.    If it occurred within four feet of the intersection of the pathway with the cross street, the drop was less than two inches.    Such condition under such circumstances, the court thought, does not warrant a finding that the street was actionably defective.

Judgment was rendered, dismissing the action with costs.

For the appellant there was a brief by *Donovan & Gleiss,* attorneys, and *Grady, Farnsworth & Kenney,* of counsel, and oral argument by *W. H. Farnsworth* and *Timothy J. Donovan.*

For the respondent there was a brief by *Naylor & Mc-Caul,* and oral argument by *W. B. Naylor.*

The following opinion was filed December 7, 1915:

MARSHALL, J.    Was the trial court clearly wrong in holding that a jury could not justly find that the traveled way in question was not reasonably suitable for public use?

It is not often that a decision by the trial court that the evidence does not present a jury question is disturbed on appeal, and that is so, in the main, because of the superior facilities possessed by such judge for understanding the exact situation required to be dealt with.    That advantage is more or less helpful according to circumstances.    In this case it is not particularly significant since there is no considerable conflict in the evidence, as the trial court held, and the pictorial representation of the place of the accident, affords us about as good an opportunity as such judge had for understanding the evidence.

It must be conceded that there was ample evidence tend-

ing to prove that the sidewalk area which had been used for years was defective, in that the old pathway had been excavated by wear and washing so that, at one point, the track was eleven inches or more below the surface of the ground on the south side, and the depth varied each way from the deepest place until at a few feet therefrom it coincided with the general level. Whether the bottom of the depression was smooth or there were steps in it caused by washing, was disputed, though there was evidence tending to prove the latter and it was corroborated by evidence that the conditions was such that a new pathway had been made around the depression which had been used for a long time and was so close thereto that a side-step by one traveling thereon was liable to cause him to stumble or step into it. Let it be conceded that the side of the depression sloped from the brink to the bottom, as the trial court suggested, and the photographs introduced in evidence support, yet, it is not at all unlikely that, in case of a person using the diverging pathway in the nighttime and being required to step aside to allow another coming from the opposite direction to pass him, he would naturally reach so far down the side of the slope as to momentarily lose control of his movements and fall. The plaintiff did so, and received the injury complained of. Other persons had previously met with somewhat similar difficulties and the condition which caused the same had existed for a long time.

The trial judge appears to have given rather too much significance to evidence that the bottom of the old pathway was smooth and some eighteen inches aside from the traveled way around it, so that one walking on the latter, would have to take quite a wide side-step to reach the former. A moderate side-step, seemingly, would be sufficient, in the nighttime, as before suggested, to start one, uncontrollably, into the depression, as there is evidence to indicate, was what happened in the particular case.

Now, in view of the fact that it was the duty of the re-

spondent to keep the traveled way reasonably safe for use by
night as well as by day, and the peculiar situation rendering
it probable that, in the nighttime, a person might fall into the
depression in the old pathway, as appellant did, it seems
quite clear that the trial court was wrong in holding that
there was no foundation in the evidence for the jury finding
that the way was not reasonably safe for public use.    The
judge seems to have given too much significance to the cir-
cumstance that the sidewalk area had not been prepared by
the municipality for public travel, and was not used to any
great extent.    It was a proper place for such travel and had
been used therefor a 'long time.    Therefore the responsibility
in respect thereto was practically the same as if it had been a
prepared way.    *James v. Portage,* 48 Wis. 677, 5 N. W. 31.
It was there held that customary use of one side of a street as
a footway imposes on the municipality in which it is situ-
ated the duty to keep it in a proper state of repair and that,
if the same becomes "so defective as to render travel over the
same unsafe, and the city takes no measures to warn the pub-
lic against using the footway, the city becomes liable to any
traveler who may suffer an injury from such defective foot-
way without his fault."    In view of that well settled prin-
ciple, we are inclined to the view that the trial court may
have applied a wrong rule of law to the evidence.    In any
event, we are constrained to hold that there was a jury ques-
tion in respect to whether the traveled way was suitable for
use or not, and that the finding made by the jury should not
have been disturbed.

The next and only other question is: Did the trial court
err in holding that appellant, as a matter of law, was guilty of
contributory negligence from the fact that he was familiar
with the defect?

In respect to the last question, it seems a wrong rule was
applied to the evidence.    It has often been held that a person
in using a public traveled way is not bound, at his peril, to

remember and avoid danger from a defect in such way with which he is familiar.    In the absence of any reasonable excuse for not avoiding the danger, and a personal injury resulting, there is a presumption of negligence, but, in case of such excuse, a jury question is presented as to whether ordinary care was exercised or not.    *Wheeler v. Westport,* 30 Wis. 392; *Crites v. New Richmond,* 98 Wis. 55, 73 N. W. 322; *Collins v. Janesville,* 111 Wis. 348, 356, 87 N. W. 241, 1087.    In the last case cited it was said: "The presumption [of negligence from knowledge of the defect] is rebuttable and gives way so readily to explanatory circumstances that any reasonable excuse for the forgetfulness is sufficient to carry the case to the jury on the question of the plaintiff's contributory negligence."    Here there was an excuse which a jury might reasonably say was reasonable.    The accident happened in the nighttime.    The appellant, probably, did not see the exact location of the dangerous part of the depression.    He suddenly met a person coming from the opposite direction, and his mind was immediately occupied with the idea of giving way so such person could pass.    He testified that he, momentarily, took his mind off the subject of the defect and stepped to the right to give the oncoming person the right of way, and that, in doing so, he went into the hole.    In view of that evidence, whether his conduct was consistent with ordinary care was a fair jury question.

It follows that the judgment appealed from must be reversed, and the cause be remanded with directions to reinstate the answers which were set aside and to render judgment on the verdict in plaintiff's favor.

*By the Court.*—So ordered.

A motion for a rehearing was denied, with $25 costs, on February 1, 1916.